# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL WEST,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1012 (RMC)** |
| | ) | |
| **MARGARET SPELLINGS,** | ) | |
| **Secretary,** | ) | |
| **U.S. Department of Education,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

## RESPONDENT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Respondent, through counsel, the United States Attorney for the District of Columbia, respectfully moves to dismiss Petitioner's Complaint for lack of jurisdiction and failure to state an actionable claim. In further support of this motion, Respondent respectfully refers the Court to the attached memorandum of points and authorities and proposed order.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL WEST,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1012 (RMC)** |
| | ) | |
| **MARGARET SPELLINGS,** | ) | |
| **Secretary,** | ) | |
| **U.S. Department of Education,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**RESPONDENT'S MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

The Respondent, Margaret Spellings, Secretary, U.S. Department of Education ("Department"), through counsel, the United States Attorney for the District of Columbia, respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the complaint filed by Petitioner Michael West, for lack of jurisdiction and failure to state an actionable claim. The Court should dismiss this action with prejudice because Petitioner's Freedom of Information Act claim fails for want of administrative exhaustion and because Petitioner has no private right of action, has suffered no harm and thus lacks Article III standing with respect to his other claim.

Petitioner's allegations demonstrate a misunderstanding both of the Department's authority and responsibilities, as well as Petitioner's own rights under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and administrative regulations at 34 C.F.R. Part 104; the Administrative Procedure Act ("APA"), 5 U.S.C. § 704; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; the Fourteenth Amendment to the United

States Constitution ("Fourteenth Amendment"), and Department regulations at 34 C.F.R., Part 105. For the reasons set forth below, Petitioner's complaint must be dismissed.

## I.   NATURE OF THE SUIT

Petitioner's ten-page complaint, filed on May 31, 2006, predicates jurisdiction on the FOIA, Section 504, 34 C.F.R. Part 104, the APA, Title II of the ADA, the Mandamus Act, 28 U.S.C. § 1361, the Fourteenth Amendment, and 34 C.F.R., Part 105.

In Counts One and Two of the complaint, Petitioner alleges violations of the FOIA and seeks an order, pursuant to that statute, compelling the Department to process further his requests dated November 25, 2005 and February 8, 2006, and to produce to Petitioner records sought therein. Petitioner's FOIA claims must be dismissed because the Department properly determined: (1) that Petitioner's November 25, 2005 request did not reasonably describe the records sought; and (2) that the FOIA did not require it to create new documents in order to respond to Petitioner's February 8, 2006 request.

In Counts Three through Twelve, Petitioner seeks to compel the Department, *inter alia*, under the Mandamus Act and the APA, to exercise its enforcement authority under Section 504 and 34 C.F.R. Part 104, in a manner favorable to Petitioner.  Petitioner's allegations demonstrate a misunderstanding both of the Department's authority and responsibilities under law and Petitioner's own rights under Section 504, the ADA, the Fourteenth Amendment to the United States Constitution, and Department regulations at 34 C.F.R., Part 105.

The Department's adverse administrative decision concerning Petitioner's retaliation complaint challenged herein, was a proper exercise of the Department's administrative enforcement authority – authority committed to agency discretion.  Petitioner has neither a private right of action nor standing to bring this action against the Department.  However, Petitioner does have a remedy

under Section 504 directly against the allegedly discriminatory recipient of federal funds – *i.e.*,
Webster University.

## II.    DISCUSSION

### A.    Standard of Review

In assessing a motion to dismiss under Rule 12(b)(6), Petitioner's factual allegations must
be presumed true and should be liberally construed in his favor.  See Phillips v. Bureau of Prisons,
591 F.2d 966, 968 (D.C. Cir. 1979); Alexander v. FBI, 971 F. Supp. 603, 607 (D.D.C. 1997).
Petitioner must be given every favorable inference that may be drawn from his allegations of fact.
See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint should be dismissed if it appears
beyond doubt that no set of facts proffered in support of Petitioner's claims would entitle him to
relief.  See Conley v. Gibson, 355 U.S. 41, 45 46 (1957); Haynesworth v. Miller, 820 F.2d 1245,
1254 (D.C. Cir.1987).  However, "the Court need not accept inferences drawn by the plaintiff if
those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept
the plaintiff[s'] legal conclusions."  Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL
1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States,
101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276
(D.C. Cir. 1994)).  Application of this standard in this case requires its dismissal for the reasons
described below.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must find that Petitioner
can prove no set of facts in support of his claims that would entitle him to relief. A court may
appropriately dispose of a case under Rule 12(b)(1) on standing grounds, but the Petitioner's
complaint must be construed liberally and should receive the benefit of all favorable inferences that
can be drawn from the alleged facts.  Petitioner, however, still has the burden of proving subject

matter jurisdiction by a preponderance of the evidence.  Wiggins v. Powell, 2005 U.S. Dist. LEXIS 3984 (D.D.C. March 7, 2005).

Specifically, Petitioner's burden of production on standing is "the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence,'" Sierra Club v. EPA, 292 F. 3d 895, 899 (D.C. Cir. 2002), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (hereinafter "Defenders of Wildlife"), and must thereby "show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury." Id., quoting Am. Petroleum Inst. v. EPA, 216 F.3d 50, 63 (D.C. Cir. 2000).  To satisfy this burden the proponent of the suit "must either identify in [the] record evidence sufficient to support its standing . . . or, if there is none . . . submit additional evidence. ..." Id.

The Supreme Court has made clear that "it is the responsibility of the complainant to clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Renne v. Geary, 501 U.S. 312, 316 (1991).  In analyzing a motion to dismiss, the court must presume that "general allegations embrace those specific facts which are necessary to support the claim," Defenders of Wildlife, 504 U.S. at 561, but it is not required "to fill in critical lacunae in plaintiffs' allegations." National Wrestling Coaches Association ("NWCA") v. U.S. Department of Education, 263 F. Supp. 2d 82, 108 (D.D.C. 2003), aff'd on appeal, 366 F.3d 930 (D.C. Cir. May 14, 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 2537 (2005).  Because the facts are uniquely within Petitioner's knowledge, his "failure to allege them with sufficient specificity to provide notice of the precise basis for standing to maintain this suit cannot be overlooked." Id.  Here, Petitioner has not and cannot allege a sufficient factual basis to support the conclusion that he has standing to sue.

4

**B.    Factual Background**

**1.    FOIA Claims - Complaint Counts One and Two**

Count One - February 8, 2006 Request

By e-mail dated February 8, 2006,  Petitioner requested access under the FOIA to the following Department records: (1) a compilation of "all … retaliation and discrimination allegations made against Webster University [submitted or otherwise made known to the Department]"; and (2) a "list of those allegations … not … investigated by [the Department]."  February 8, 2006 FOIA Request, attached as Exhibit 1.  By letter dated March 9, the Department released to Petitioner four pages of records responsive to Item 1 of his request, comprising a two-page list of all allegations against Webster University received by OCR since October 10, 1993, a one-page document explaining the numeric resolution codes on the list of allegations, and a one-page document explaining the numeric resolution types included on the list of allegations. March 9, 2006 Department Decision on February 8, 2006 Request, attached as Exhibit 2.  The Department's March 9, 2006 decision further advised Petitioner that it had located no records responsive to Item 2 of his request, as OCR does not keep records of allegations that it has not investigated and federal agencies are not required to create new records in order to respond to FOIA requests. Id.  Petitioner allegedly appealed the Department's partial denial of his request by e-mail dated March 23, 2006, asserting that the records released to him with the Department's March 9, 2006 decision on his request "did not fully satisfy [sic] the requests."  Appeal re: February 8, 2006 Request (and related email correspondence), attached as Exhibit 3.  The Department had not issued a determination on Petitioner's appeal prior to the commencement of this action.

Count Two - November 25, 2005 Request

By e-mail dated November 25, 2005, Petitioner requested access under the FOIA to the following Department records:  "all information and materials that are responsive or pertain to a letter provided to this specific branch of the U.S. Dept. of Education Office [sic] for 'Reconsideration for 07052031' dated October 3, 2005."  November 25, 2005 FOIA Request, attached as Exhibit 4.  By email dated December 14, 2005, the Department advised Petitioner that the letter it had received from him dated October 3, 2005, concerned a matter other than reconsideration of 07052031, and that Petitioner had not to date completed the referenced request for reconsideration, and asked Petitioner to clarify what documents he was seeking under FOIA. December 14, 2005 Department Request for Clarification re: November 25, 2005 Request, attached as Exhibit 5.  In follow-up electronic mail correspondence during the time period from December 20, 2005 through April 21, 2006, the Department repeatedly sought clarification from Petitioner concerning his FOIA request; Petitioner never provided such clarification.   Follow-up email correspondence re: November 25, 2005 Request, attached hereto as Exhibit 6.

### 2.  OCR Claims – Complaint Counts Three Through Twelve

On March 8, 2005, Petitioner filed an administrative complaint with the Department's Office for Civil Rights ("OCR") (OCR Docket No.07052031) alleging that Webster University had retaliated against him for filing a prior administrative complaint in December, 2004 (OCR Docket No. 07052011) alleging discrimination on the basis of disability under Section 504.   OCR investigated the March 8, 2005 retaliation complaint and, on September 2, 2005, it issued to Petitioner a letter of findings concluding that Webster University had legitimate nondiscriminatory reasons for the actions alleged by Petitioner to be retaliatory.  Petitioner sent several follow-up e-

mails to OCR questioning its finding, but he never filed an administrative appeal of the September 2, 2005 finding.   In his March 8, 2005 OCR complaint, Petitioner alleged:

> 1.     That university officials failed to provide him with prompt disbursement of Federal student financial aid because he filed a disability complaint with OCR; and
>
> 2.     A teacher would not let him take the final test in a class that he attended in January 2005, because he filed a disability complaint with OCR.

OCR concluded that Petitioner had alleged facts sufficient to establish a prima facie case of retaliation with regard to both issues raised.   OCR's investigation of Petitioner's March 8, 2005 retaliation complaint under Section 504 concluded that Webster University had articulated legitimate, non-retaliatory reasons for the actions complained of and, on that basis, closed Petitioner's retaliation complaint.   Specifically, concerning the first allegation, OCR concluded:

> … the University's proffered reason for the time required for you to receive your loan was not a pretext for retaliation.  You filed an application for a loan on February 4, 2005; the University submitted the application on February 8, 2005.   The University received the funds on February 22, 2005, prepared a check on February 23, 2005, and mailed it to you on February 25, 2005.   There is insufficient information to support your allegation that the University intentionally delayed processing the loan application because you had filed an OCR complaint.

September 2, 2005 OCR Letter of Findings re: Petitioner's March 8, 2005 OCR Complaint, attached as Exhibit 7.   Similarly, concerning the second allegation, OCR determined that the University provided a legitimate, nondiscriminatory reason for not allowing Petitioner to take the final exam.

Specifically, OCR concluded:

> The University's proffered reason for not allowing you to take the final exam is that the course syllabus states class attendance is mandatory.  You missed the last six classes and were not allowed to take the final exam.

Id.

7

**C.    Argument**

**1.    Petitioner States No Claim Cognizable under FOIA with Respect to His February 8, 2006 Request Because the Statute Does Not Require the Department to Create New Records in Order to Respond to a FOIA Request.**

Petitioner alleges the following deficiencies in the Department's processing of his February 8, 2006 FOIA request: (1) no control number was assigned to his request and appeal (Compl. at ¶¶ 9, 12); and (2) the Department denied his request in violation of the FOIA. Id. For the reasons stated below, Petitioner's claims in this regard are without merit and should be dismissed.

First, Petitioner does not identify and Respondent is not otherwise aware of any requirement that the Department assign identification numbers to FOIA requests and appeals. Second, contrary to Petitioner's assertion that the Department denied his request (see Compl. at ¶ 8), the Department timely released to Petitioner all records it located that were responsive to Item 1 of his request. However, the Department denied Item 2 of the request, which asked it to "make a separate list of those allegations that have not been investigated," because OCR does not maintain in its files records of allegations it has not investigated. Exhibit 2. The Department's decision to deny Petitioner's request, in part, was proper because neither the FOIA nor the Department's implementing regulation at 34 C.F.R. Part 5 requires new records to be created in order to respond to FOIA requests. See Students Against Genocide v. Dep't of State, 257 F.3d 828, 837 (D.C. Cir. 2001); Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well-settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." (citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975); Krohn v. U.S. Dep't of Justice, 628 F.2d 195, 197-98 (D.C. Cir. 1980) (holding that FOIA did not require the production of "selective information" rather than designated agency records); 34 C.F.R. § 5.15 ("Records are not required to be created by compiling selected items from the [Department's] files…."). Because the

8

Department was unable to find the information Petitioner requested in Item 2 of his February 8, 2006 FOIA request in its existing records and is not required to create new documents pursuant to a FOIA request, the Court should dismiss the claim stated in Count One of the complaint.[1]

     2.     Petitioner States No Claim Cognizable under FOIA with Respect to His November 25, 2005 FOIA Request, Because He Has Not Reasonably Described the Records Sought, as Required.

Petitioner alleges the following deficiencies in the Department's processing of his November 25, 2005 FOIA request: (1) no control number was assigned to his request and appeal (Complaint, ¶¶ 9, 12); and (2) the Department denied his request in violation of the FOIA. For the reasons stated below, Petitioner's claims in this regard are without merit and should be dismissed. First, as discussed above, Petitioner does not identify and Respondent is not otherwise aware of any requirement that the Department assign identification numbers to FOIA requests and appeals.

Second, Petitioner's claim, relative to the November 25, 2005 request, is subject to dismissal for Petitioner's failure to exhaust administrative remedies because "[e]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citing Oglesby v. United States Dep't. of the Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990). The FOIA and the Department's implementing regulation at 34 C.F.R. Part 5 both obligate the Department to respond to a request that "reasonably describes" the records sought. See 5 U.S.C. § 552(a)(3); 34 C.F.R. § 5.51(c). An agency is "under no obligation to release records that have not been reasonably described." Marks v. U.S. Department of Justice, 578 F.2d 261, 263 (9th Cir. 1978). Moreover, when a requester fails to comply with the FOIA's

_____

[1] Sakamoto v. U.S. Environmental Protection Agency, ___ F.Supp.2d ___, 2006 WL 2067848 Slip op. at *3 (N.D.Cal. Jul 24, 2006) (FOIA does not require an agency to create records in response to a request).

administrative processing requirements – including the requirement that records sought be "reasonably described," he may be deemed to have failed to exhaust administrative remedies prior to suit. See, e.g., Voinche v. U.S. Dep't. of the Air Force, 983 F.2d 667, 669 n.5 (5th Cir. 1983) (concluding that administrative remedies on fee waiver request were not exhausted when requester failed to amend request to achieve specificity required by agency regulations).

Petitioner's November 25, 2005 request does not reasonably describe the records sought. Specifically, Petitioner asked the Department for "all information and materials that are responsive or pertain to a letter provided to this specific branch of the U.S. Dept. of Education Office [sic] for 'Reconsideration for 07052031' dated October 3, 2005." Exhibit 4. On December 14, 2005, the Department advised Petitioner that his October 3, 2005 letter to the Department concerned "Sallie Mae" rather than the matter referenced in Petitioner's request, i.e., "reconsideration of 07052031" and, in view of the apparent discrepancy, asked Petitioner to clarify what documents he was seeking under FOIA. Exhibit 5. In the course of extensive follow-up electronic mail correspondence regarding Petitioner's request, and despite the Department's repeated requests for clarification, Petitioner never furnished additional information or clarification. Exhibit 6.

In Gillin v. Internal Revenue Service, 980 F.2d 819 (1st Cir. 1992), the Court of Appeals for the First Circuit, on similar facts, ruled that the Government was under no obligation to respond to a request that did not reasonably describe the records sought by the requester. There, the requester asked for, inter alia, all documents used by the IRS as a basis to conclude that there was a deficiency in the requester's tax return. The IRS took the position that it had no documents responsive to this item of the request because it had in fact concluded that there was no deficiency in the requester's return. The Gillin Court stated:

> … [W]ithin a week after Mr. Gillin made [his FOIA request], the IRS informed him that it had not calculated a deficiency in his 1985 taxes. This news should have alerted Mr. Gillin to the flaw in his request. He should have recognized that the documents used in [the IRS's investigation] had not been "used as a basis to conclude there was a deficiency," and that consequently there was a discrepancy between what he actually said [in his request] and what he meant to say. Since he, and not the IRS, was in a position to recognize and correct the ambiguity, we think it sensible that he bear the burden of clarification. There is nothing in the record, however, to indicate that Mr. Gillin tried to amend or clarify his request at any time during his administrative dealings with the IRS.

980 F.2d at 823.

Similarly, Petitioner here was informed that the Department could have no records about an October 3, 2005 letter concerning "Reconsideration for 07052031" because the October 3, 2005 letter concerned something else entirely – Sallie Mae. Accordingly, it was incumbent upon Petitioner to amend, correct or clarify his request if he wanted the Department to process it under the FOIA, and his failure to do so relieved the Department of any obligation to respond to the request. For this reason, the Court should dismiss the claim set forth in Count Two of the complaint.

**3.      Petitioner Does Not Have a Private Right of Action Against the Department under Section 504.**

Section 504 prohibits discrimination against individuals on the basis of disability in programs or activities receiving federal financial assistance. The statutory scheme under Section 504 – which is treated in the same manner by the courts as Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d-2000d-7; 34 C.F.R. Part 100 and 101, and Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-1688; 34 C.F.R. Part 106 – as interpreted by the Supreme Court and the Circuit Courts of Appeals that have considered the issue, does not contemplate a private right of action for declaratory and injunctive relief against a federal funding agency for termination of funding assistance to an allegedly discriminatory entity or program receiving funds from that agency. Cannon v. University of Chicago, 441 U.S. 677, 745, 748 (1979); Franklin v.

Gwinnett County Public Schools, 503 U.S. 60, 65-76 (1992). As a result, the Petitioner's complaint fails to state a justiciable cause of action against the Department. The Department's regulations implementing Section 504 authorize the Department to investigate allegations of discrimination, to initiate Section 504 compliance reviews and to take administrative measures to seek compliance where recipients of the Department's funds are found to have engaged in illegal discrimination. Neither Section 504 nor its implementing regulations, however, provide anyone with a mechanism to sue the Department in order to enforce the statute in a particular way.

In Cannon, the Supreme Court held that there was an implied private right of action under Title IX. The Court determined that Congress intended Title VI, on which Title IX and Section 504 were modeled, to confer a private right of action upon the beneficiary, *i.e.*, student or employee of a funded program, to be taken directly against the alleged discriminating entity receiving federal funding. On the other hand, Cannon did not provide the beneficiary with a private right of action against the funding federal agency. The Court implied a private right of action directly against the alleged discriminating entity/recipient because complainants/beneficiaries – who may be complainants in the administrative scheme – are not participants in the administrative enforcement proceedings conducted by federal agencies and "even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant." Id. at 706, n.41. Thus, the Petitioner in this case does not have a private right of action against the Department, irrespective of the claims that he may have against Webster University.

In Cannon, the Court noted that Congress's decision not to authorize a private right of action against federal funding agencies under Title VI represented "a compromise aimed at protecting individual rights without subjecting the [Federal] Government to suits." Id. at 715-16. The Court observed in Cannon that Congress enacted Title VI to accomplish two related, but different

objectives: first, "it wanted to avoid the use of federal resources to support discriminatory practices; and second, it wanted to provide individual citizens effective protection against those practices." Id. at 704.

The first objective was served by the enactment of Section 602, 42 U.S.C. §2000d-1, which establishes a specific administrative mechanism for the enforcement of Title VI by federal agencies. That provision directs federal funding agencies to implement Title VI and provides that compliance may be effectuated by cutting off federal funds or by "any other means authorized by law." However, imposition of the funding termination sanctions by the head of the funding agency must be preceded in every case by a hearing, an express finding on the record of noncompliance, an agency determination that voluntary compliance cannot be secured, and notification to Congress that the agency intends to terminate federal funding. 42 U.S.C. §2000d-1; 34 C.F.R. §§100.8-100.10.

To meet the second objective – providing individual citizens effective protection against racial discrimination, Congress enacted section 601, 42 U.S.C. §2000d. That section creates a personal right, by declaring that "[n]o person . . . shall, on the ground of race . . . be subjected to discrimination under any program receiving federal financial assistance." By the terms of the statute, the party subject to liability under this provision is the entity that administers a program "receiving federal financial assistance." To find a basis for liability against the federal defendants under this provision would violate not only the plain language of the statute, but also the logic of the Congressionally mandated enforcement scheme.

Federal courts have expressly acknowledged the limited role that a complainant plays in the administrative enforcement process. Cannon, 441 U.S. at 706 n.41; Women's Equity Action League v. Cavazos, 906 F.2d 742 (D.C. Cir. 1991); NAACP v. Medical Center, Inc., 599 F.2d 1247, 1254 (3rd Cir. 1979). Section 504 does not provide the beneficiary of federal financial assistance, as a

recipient of federal funding, a right to file an administrative complaint alleging discrimination. The beneficiary's right to file a complaint derives solely from the Department's regulations implementing Section 504. See 34 C.F.R. Part 104. Further, the statutory framework of Section 504 does not allow Petitioner here to proceed directly against the Department. Cf. Heckler v. Chaney, 470 U.S. 821, 832-33 (1985) (civil enforcement decisions committed to agency discretion).

The judicial review contemplated by the statute in no way encompasses Petitioner's present action. The extent of judicial review available under Title VI was carefully delineated by Congress in Section 603 of Title VI, 42 U.S.C. §2000d-2. Only entities the federal financial assistance of which has been terminated by an agency for failure to comply with Title VI may seek judicial review of the agency's actions.

Consistent with the minimal administrative participation allowed to the "beneficiary" under the statutory framework, the implementing regulations do not permit a disappointed complainant to seek judicial review. Rather, the regulations merely provide for two possible resolutions of the complaint. If an investigation reveals that the matter does not warrant corrective action, the complainant/beneficiary is not entitled to further advance his/her rights in the administrative process. 34 C.F.R. §§100.7(d)(2), 101.23 and 104.61 (complainant not party to administrative proceedings). Rather, the complainant may pursue a private right of action directly against the alleged discriminating recipient of federal funds under Section 504, even without exhausting available administrative procedures. See Cannon, 441 U.S. at 706-708. Conversely, if the investigation indicates non-compliance, and a voluntary resolution is not possible, the only action the Department can take directly is the initiation of administrative fund termination proceedings or referral of the case to the Department of Justice for judicial enforcement. 34 C.F.R. §§100.8(a), 101.111-101.131 and 104.61.

14

The Court of Appeals for the District of Columbia Circuit considered the issue of whether the Secretary of Education is a proper defendant in an action under Title VI, and held that plaintiffs do not have a cause of action to sue the funding agency directly under Title VI in order to require the Secretary of Education to exercise enforcement authority. <u>Washington Legal Foundation v. Alexander</u>, 984 F.2d 483 (D.C. 1993); <u>Women's Equity Action League</u>, <u>supra</u>.

In <u>Women's Equity Action League</u>, a D.C. Circuit panel, in a unanimous decision, found no authority for "the continuing cross-the-board federal court superintendence of executive enforcement plaintiffs seek" despite detailed allegations of complete abdication by an entire agency of its enforcement duty.  Instead, the Court concluded that the plaintiffs were entitled to sue the recipient of federal funds directly that had allegedly engaged in prohibited discrimination.  The Court held that, while Congress could authorize legal actions against federal executive agencies, it had chosen not to do so in Title VI.

Similarly, the issue of whether the Secretary was a proper defendant under Section 504 was decided adversely to the plaintiff by the Second Circuit in <u>Marlow v. U.S. Department of Education</u>, 820 F.2d 581 (2d Cir. 1987) (*per curiam*), *cert. denied*, 484 U.S. 1044 (1988).  In <u>Marlow</u>, the plaintiff filed an administrative complaint with OCR.  After being denied relief at the administrative level, the plaintiff in <u>Marlow</u> then turned to the federal courts, commencing an action against the Department and then-Secretary Bennett for equitable relief.  820 F.2d at 580-81.  In considering plaintiff's appeal of the dismissal of his complaint by the District Court, the Second Circuit affirmed in a short, *per curiam* opinion.  The Court held that neither Section 504 nor the APA provided for a private cause of action against the funding agency.  Relying heavily on <u>Salvador v. Bennett</u>, 622 F. Supp. 438 (N.D. Ill. 1985), *aff'd*, 800 F.2d 97 (7th Cir. 1986), the <u>Marlow</u> Court concluded that the proper defendant is the recipient of the federal funds, not the funding agency or the agency's

15

head. 820 F.2d at 583-84. The panel saw no injustice to the plaintiff because "[the plaintiff was] still free to pursue an action directly against the [recipient of federal funds]." 820 F.2d at 584. <u>See also</u>, <u>Grimes v. Cavazos</u>, 786 F. Supp. 1184 S.D. N.Y. 1992). Accordingly, Plaintiff's claim here under Section 504 likewise must be dismissed.

### 4. Petitioner Does Not Have a Private Right of Action Against the Department under the APA.

The APA limits judicial review to those federal agency actions "for which there is no other adequate remedy in a court." <u>See</u> 5 U.S.C. § 704; <u>Council of and for the Blind v. Regan</u>, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (<i>en banc</i>). In this case, plaintiff has a remedy under Section 504 directly against the allegedly discriminatory recipient of federal funds – <i>i.e.</i>, Webster University. <u>See</u> <u>Cannon</u>, <u>supra</u>, 441 U.S. at 696-701, 715-16 (1979) (recognizing implied private cause of action against recipient of federal funds under Title VI and IX); <u>Alexander v. Sandoval</u>, 532 U.S. 275, 279 (2001) (private individuals may sue to enforce Title VI and obtain both injunctive relief and damages).

As the D.C. Circuit has repeatedly held, plaintiff's cause of action under Section 504 against the educational institution at issue is an "adequate remedy" under section 704 that precludes an action directly against the Department under the APA. <u>See</u> <u>Women's Equity Action League</u>, 906 F.2d at 751 (plaintiff not entitled to bring Title VI action against the Secretary of Education for allegedly failing to process discrimination complaints against, or conduct investigations of, federal fund recipients); <u>Washington Legal Foundation</u>, 984 F.2d at 486 (affirming dismissal of Title VI claim against Department of Education and noting that the plaintiffs "may pursue actions under Title VI against their respective individual institutions"); <u>see</u> <u>also</u> <u>Council of and for the Blind</u>, 709 F.2d at 1532-33 (adjudging a statutory remedy specifically against the discriminating entity deemed

16

adequate and therefore preclusive of a default remedy under the APA); <u>Coker v. Sullivan</u>, 902 F.2d 84, 89 (D.C. Cir. 1990) ("[I]f other remedies are adequate, federal courts will not oversee the overseer").  As the D.C. Circuit has instructed, the Supreme Court's <u>Cannon</u> decision  "suggests that Congress considered private suits [against individual educational institutions] to end discrimination not merely adequate but in fact the proper means to enforce Title VI and its sister anti-discrimination statutes." <u>Women's Equity Action League</u>, 906 F.2d at 751 (emphasis added).  Here, Petitioner's ability to advance suit directly against Webster University, the educational institution that he claims discriminated against him, is the only remedy available to address the wrong he perceives.  A collateral attack against the Department under the APA is simply not available.  See <u>id</u>.[2]

**5.    Petitioner Does Not Have a Cause of Action under the Mandamus Act.**

Mandamus is an extraordinary remedy available only if other relief is inadequate.  As we have established above, Petitioner has an adequate remedy available under Section 504 in the form of a lawsuit against Webster University.  In fact, a determination that an APA action is barred by plaintiff's remedy against the University "demands the further conclusion that mandamus is not available." <u>Women's Equity Action League</u>, 906 Fd.2d at 752; <u>see</u> <u>Council of and for the Blind</u>, 709 F.2d at 1522.

**6.    Petitioner Does Not Have a Cause of Action Against the Department under Title II of the ADA, the Fourteenth Amendment to the United States Constitution, or Department Regulations at 34 C.F.R. Part 105.**

Petitioner also alleges a violation under Title II of the ADA.  The ADA does not provide Petitioner a private right of action against the United States, because the ADA does not apply to

---

[2]  Moreover, because Petitioner seeks to compel the agency to exercise its enforcement discretion, the quintessential act committed to agency discretion, the APA does not provide him relief. <u>Heckler</u>, 470 U.S. at 832-33.

federal executive branch agencies. See Raines v. U.S. Department of Justice, 424 F.Supp.2d 60, 65 (D.D.C. 2006). Additionally, the Fourteenth Amendment only applies to State action, not the action of the United States. Id.

Finally, because the discrimination alleged by Petitioner arises out of federally assisted programs or activities, *i.e.*, discrimination against Petitioner by Webster University, a recipient of federal financial assistance, this cause of action is governed by Department regulations found at 34 C.F.R. Part 104. Department regulations at 34 C.F.R. Part 105 do not apply, since Part 105 only applies to the enforcement of nondiscrimination on the basis of handicap in programs or activities conducted by the Department. Part 105 does not apply to the investigation or findings in Petitioner's administrative complaints against Webster University filed with OCR. Petitioner's allegations constitute yet another impermissible attempt to attack collaterally OCR's adverse decision with regard to his retaliation complaint filed on March 8, 2005.

### 7. Petitioner Has Not Established the Necessary Elements of Article III Standing.

The Constitution requires a plaintiff to establish three elements to demonstrate standing to sue the federal government for failure to carry out its executive functions. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982); see also NWCA v. U.S. Department of Education, 263 F. Supp. 82, 105-106 (D.D.C. 2003). First, the plaintiff must show that he or she has suffered an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" Defenders of Wildlife, 504 U.S. at 560; see also Bensenville v. FAA, 376 F.3d 1114, 1118-19 (D.C. Cir. 2004). Second, the alleged injury must be "traced to the challenged action." Defenders of Wildlife, 454 U.S. at 560 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976); see also Florida Audubon Society v. Bentsen, 94 F.3d 658, 663

18

(D.C. Cir. 1996). Third, the alleged concrete injury must be "likely to be redressed by a favorable decision" of the court hearing the matter. <u>Valley Forge</u>, 454 U.S. at 472; <u>see also</u> <u>Florida Audubon Society</u>, 94 F.3d at 661.

Further, in order to demonstrate standing for a claim requesting declaratory or injunctive relief (such as the mandamus[3] sought here), "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983) (citations omitted); <u>see also</u> <u>Branton v. FCC</u>, 993 F.2d 906, 908 (D.C. Cir. 1993). In <u>Branton</u>, a citizen challenged the FCC's ruling that a radio broadcast that contained profanity was not "indecent" because the tape was part of a "bona fide" news story. The court held the "possibility that the petitioner will again some day be exposed to broadcast indecency lacks the imminence required under <u>Lyons</u>…" <u>Branton</u>, 993 F. 2d at 909. Similarly, Petitioner has provided absolutely no evidence that he will suffer immediate harm if his claim of discrimination is not investigated, and the possibility that discrimination will be discovered in the investigatory process is too attenuated to establish a real injury.

### a.    Petitioner has not established "concrete and particularized" injury.

Petitioner utterly fails to allege or establish the existence of a "concrete and particularized" injury. In the complaint, Petitioner does not state that he has suffered any actual injuries as a result

---

[3]    Petitioner has filed a mandamus claim under 28 U.S.C. 1361. A writ of mandamus does not confer an independent basis of jurisdiction but rather merely supplies a permissible remedy in actions otherwise properly brought on independent jurisdictional grounds. <u>See</u> <u>Udall v. Oil Shale Corp.</u>, 406 F.2d 759 (10th Cir. 1969); <u>Prairie Band of Pottawatomie Tribe of Indians v. Udall</u>, 355 F.2d 364 (10th Cir. 1966), <i>cert. denied</i>, 385 U.S. 831, 87 S. Ct. 70, 17 L. Ed. 2d 67; <u>Smith v. United States</u>, 224 F. Supp. 402 (D.Wyo.1963), <i>aff'd</i>, 333 F.2d 70 (10th Cir. 1964); <u>International Fed. of P. & T. Eng., Loc. No. 1 v. Williams</u>, 389 F. Supp. 287, 290 (E.D.Va.1974). (<u>See</u> also n.2, <i>infra</i>.)

of the Department's actions or inactions.  In short, Petitioner has failed to make minimal allegations that he has suffered particularized harm as the result of the Department's failure to investigate his discrimination claim.

Critically, mere alleged legal violations are not enough to establish harm.  The Supreme Court has held that violations of law, even if true, are not sufficient to establish injury in fact. Without this key element of <u>Defenders of Wildlife</u>'s standing analysis, Petitioner cannot show standing to sue.  <u>Allen v. Wright</u>, 468 U.S. 737, 754 (1984); see also <u>Humane Society of United States v. Hodel</u>, 840 F.2d 45, 52 (D.C. Cir. 1988).

The Supreme Court's analysis in <u>Allen</u> supports this argument.  In <u>Allen</u>, respondents challenged IRS guidelines and procedures with respect to granting tax-exempt status to discriminatory private schools.  The Court vacated a lower court judgment and stated that the first basis for standing alleged by respondents – that they were harmed directly by the mere fact of government financial aid to discriminatory private schools – did not constitute a judicially cognizable injury.  The Court also rejected respondents' second argument – that their children were being deprived of an opportunity to receive an education in racially integrated schools – because that judicially cognizable injury was not fairly traceable to the government conduct that respondents challenged as unlawful.  The Court concluded that "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." <u>Allen v. Wright</u>, 468 U.S. at 754.

Petitioner claims that the Department has "a non-discretionary, ministerial duty to take all necessary steps to achieve and assure enforcement and compliance action is taken against Webster University for its discrimination or retaliation[,]" Compl. at ¶ 40, and that he "has a clear right to and for [the Department's] prompt investigation and compliance action[,]" Compl. at ¶ 43. However,

here, as in <u>Allen</u>, the Court need not accept Petitioner's conclusory legal allegations, which are insufficient to establish jurisdiction. <u>See also Valley Forge Christian College v. Americans United for Separation of Church and State</u>, 454 U.S. 464, 483 ("[Assertion] of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning.") The fact of an alleged federal right does not establish harm sufficient to support standing.

Furthermore, Petitioner cannot establish standing by merely arguing that the Department has violated a federal statutory or regulatory provision controlling its operations. The controlling case authority requires a more concrete invasion of a legally protected interest. Allegations of speculative future injury will not suffice. <u>See</u>, <u>e.g.</u>, <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983); <u>Simon</u>, 426 U.S. at 40 (1976); <u>United Transportation Union v. ICC</u>, 891 F.2d 908, 911 (D.C. Cir. 1989). Rather, a future injury satisfies the concept of "imminence" only if the injury is "'<u>certainly</u> impending.'" <u>Defenders of Wildlife</u>, 504 U.S. at 565 n.2. (original emphasis) (citation omitted). The Supreme Court has repeatedly reaffirmed the doctrine requiring that a showing of "future injury be particular and concrete." <u>See</u>, <u>e.g.</u>, <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 108 (1998). Petitioner has not demonstrated impending, particular or concrete future injury.

Thus, Petitioner's claim of an "anticipated injury" fails to meet the requirements of standing. Petitioner's suggestion of some form of unspecified injury resulting from a possible finding of discrimination does not establish standing. In short, a plaintiff lacks standing where the court must accept speculative inferences and assumptions in order to connect the alleged injury with the challenged activity. <u>See</u>, <u>e.g.</u>, <u>National Maritime Union of America v. Commander, Military Sealift Command</u>, 824 F.2d 1228 (D.C. Cir. 1987). For example, in <u>Crete Carrier Corp. v. Environmental</u>

Protection Agency, 363 F. 3d 490 (D.C. Cir. 2004), operators of five large-haul truck fleets challenged the Environmental Protection Agency's refusal to reconsider the 2004 Standard for nitrous oxide and nonmethane hydrocarbon emissions from "'heavy heavy-duty'" diesel engines. Because the trucking companies failed to show that their injury was fairly traceable to the 2004 Standard, the court dismissed their petition for lack of standing under Article III.  In reaching this conclusion, the court held:

> The Trucking Companies offer **only assertions**, not facts, to support their claims about the likely response of engine manufacturers to repeal of the 2004 Standard. That will not do. ***Speculative and unsupported assumptions regarding the future actions of third-party market participants are insufficient to establish Article III standing. Without actual evidence*** of how engine manufacturers would respond to relaxation or rescission of the 2004 Standard - and the Trucking Companies have proffered none - we cannot 'wade into this morass of marketplace analysis,' and emerge with the conclusion the engine manufacturers would revert to producing pre-October 2002 engines.

Id. at 494 (internal citations omitted)  (emphasis added).  Petitioner has not satisfied the harm prong of the standing test.

### b.    A favorable ruling will not redress Petitioner's alleged injury.

Even if the Court found that Petitioner established a sufficient injury to satisfy the standing requirement and a causal connection between the alleged injury and the Department's failure to investigate his discrimination claim, a favorable ruling would not redress the alleged harm caused by the "continuing retaliation against [Petitioner] by Webster University."   If this court ordered the Department to "comply with its rules" and "act pursuant to or by statutory deadlines...[,]" there is no guarantee that the Department would find Webster University retaliated against Petitioner and would "provide protection of Petitioner's interests."

As the Supreme Court has instructed, persons suing the government to challenge the actions of regulated third parties can rarely demonstrate standing:  "when the plaintiff is not himself the

object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Defenders of Wildlife, 504 U.S. at 562, quoting Allen v. Wright, 468 U.S. 737, 758 (1984). This Court has stressed in particular that, "[i]n that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction  and perhaps on the response of others as well." Id. Accordingly, "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict,'" id. (quoting ASARCO Inc. v. Kadish, 490 U.S. 605, 615 (1989)), "and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." Defenders of Wildlife, 504 U.S. at 562.

    The Court has held that a plaintiff's standing fails where it is "purely speculative that a requested change in government policy will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries." See NWCA, 366 F.3d at 938. In this instance, Petitioner has not pled facts sufficient to show that a decision by this court against the Department will affect Webster University and its alleged retaliation against Petitioner. Petitioner has offered nothing but "unadorned speculation" that an order requiring the Department to conduct an investigation of Petitioner's claims would redress the alleged retaliation committed against him by Webster University. See id. at 944. Such speculation is not sufficient to establish Article III standing, and accordingly there is no jurisdiction to maintain this action.

### III.    CONCLUSION

WHEREFORE, Respondent submits that the Court should grant her motion to dismiss this action with prejudice.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

OF COUNSEL:
Joanna Dailey
U.S. Department of Education
Office of the General Counsel
400 Maryland  Avenue, S.W., Room 6E300
Washington, D.C.  20202

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of September, 2006, I caused the foregoing Defendant's Motion to Dismiss, Memorandum of Points and Authorities in Support Thereof, proposed order and exhibits, to be served on the Plaintiff by mail, postage prepaid, addressed as follows:

Michael West
P.O. Box 1935
St. Charles, MO 63302

_____/s/_____
OLIVER W. MCDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739
