UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL WEST, )
)
    Plaintiff, )
v. ) Civil Case No. 06-1012(RMC)
)
MARGARET SPELLINGS, )
)
    Defendant. )

**RECEIVED**
**NOV 6 – 2006**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS RULE 56(F) MOTION

Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and paragraph 1 of the Court's scheduling order of October 3, 2006 -- and without waiving his right to oppose defendants' motion for summary judgment on the merits at a later time -- plaintiff Michael West hereby requests leave of Court to conduct the limited discovery that is necessary to the adjudication of his claims.[1]

Plaintiff should be allowed to take discovery because (1) the record that defendants have currently certified is confused, incomplete, and unreliable, and (2) there are indicia of bad faith and improper conduct on the part of the defendant and her officials that conducted the challenged underlying proceedings, and those indicia warrant discovery into whether serious violations of the law and Constitution have occurred.

---

[1] In its scheduling order, the Court gave plaintiff until November 3, 2006 to respond to defendant's motion to dismiss. If the Court desires to entertain all arguments on the merits at one time and thus, that the filing of this motion is without prejudice to plaintiff's right to cross-move and oppose defendants' arguments at a later stage. Accordingly, plaintiff does not here address defendants' arguments on the merits, except to the limited extent necessary to show that there are colorable issues for which discovery is necessary. Plaintiff proposes to cross-move for summary judgment and oppose defendants' showing within 30 days of the close (or denial) of discovery.

1

## RELEVANT BACKGROUND AND MATERIAL FACTS

This action challenges the administrate procedures and discriminatory treatment of an individual who has been subjected to a continuing course of retaliation for his participation in an alleged protected activity.

Specifically, and contrary to defendant's understanding (*see* Def. Mem., 1), plaintiff challenges the legality of defendant's handing of, and resulting decisions in, three separate but related administrative proceedings, and defendant's separate discriminatory practice of withholding timely use and benefit of Federal Student Aid from plaintiff:[2]

    1.    the OCR complaint, as amended, filed by plaintiff against Webster University;

    2.    the administrative reconsideration proceeding filed by plaintiff with the Angela Bennett, Director of the OCR Kansas City Office; and

    3.    the administrative reconsideration proceeding filed by plaintiff with Kenneth Marcus, Director of Enforcement, Washington, D.C.

All three of these proceedings turned on (1) the same allegations of retaliation committed against plaintiff and, (2) the defendant's questionable administrative and investigative procedures.

    4.    assuming defendant's facts as true, the defendant claim that an Federal Student loan application was filed and that disbursement of funds took several weeks to

---

[2] These three proceedings, each of which is properly subject to judicial review were governed by three separate statutory and regulatory regimes (1) 28 CFR Part 35, (2) Title II, and (3) related provisions in the defendant's OCR Compliance Manual. In addition, all three were required to comply with the Administrative Procedure Act.

process. Def. Mem., 7. This separate discriminatory practice of withholding Federal student aid until the end of the course directly caused Plaintiff's absence from several of the University's mandatory classes and, subsequently, caused plaintiff's absence from exams. Remarkably, then the University fabricated its excuse to suspend Plaintiff when a warning letter should have been issued instead because plaintiff reached degree candidacy status. Here, the defendant caused the injury to plaintiff, and this district court can redress that injury.

**A. Plaintiff's Education Experience and Underlying Allegations**

On September 3, 1992, plaintiff attended Webster University located in Webster Groves, Missouri. Plaintiff was a straight "A" student and had completed enough hours for degree "candidacy" status. After plaintiff filed a discrimination complaint against the University, several retaliatory, adverse student actions were taken against plaintiff. These retaliatory, adverse students actions were committed by top level officials of this same University against plaintiff, including but not limited to: interfering with student's academic course selection, unwarranted student suspensions, completion of course but the University withholding proper credit for computerized legal research course (in which plaintiff received an "A"), Defendant Spelling & University withholding or failing to disburse student financial aid until the end of course, denied use and benefit to University's emergency student loan program, unwarranted tampering with plaintiff's student records, etc.... The defendant's findings and conclusions of law referenced only two of the several allegations filed against University.

After initiation of the OCR proceeding, the defendant then changed the charges in the course of these proceedings. The plaintiff believes that the additional charges were

3

improperly removed. If there were proper findings of fact and conclusions of law provided for each of the substantiated charges, there may have been no reason for judicial review with respect to the underlying administrative proceedings.

Significantly, however, the charges in which defendant made explicit findings differed from the charges with which plaintiff had filed. (Def. memo, p.7). As so revised, the defendant's report omitted the original charges of interfering with student's academic course selection, unwarranted student suspensions, completion of course but the University withholding proper credit for computerized legal research course (in which plaintiff received an "A"), University withholding or failing to disburse student financial aid until the end of course, denied access to University's emergency student loan program, unwarranted tampering with plaintiff's student records, etc....

To date, no reasonable explanation has been provided by the defendant's failure to enter proper findings and conclusions with respect to the enumerated allegations listed above. Notwithstanding, plaintiff appealed to the Director Bennett of the OCR Kansas City Office or Director Marcus of the Washington, D.C., or both. Neither defendant's Bennett nor Marcus made any explicit findings with respect to these substantiated allegations. Defendant's handling of that appeal also suffered from irregularities. Plaintiff contends this part of defendant's decisions are arbitrary and capricious and an abuse of discretion. And faults the defendant for its failure to investigate the charges in a responsible manner. Plaintiff then filed this action.

**GOVERNING STANDARDS**

Summary judgment is proper only where the moving party establishes, by competent evidence, that "there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); *see also Mazaleski v. Treusdell.* 562 F.2d 701, 716 (D.C. Cir. 1977); Def. Memo at p. 4. Summary judgment is not available where the opposing party sets forth specific facts that demonstrate the existence of a genuine dispute on a material issue of fact (id, 56(e)), or where the opposing party makes an amply supported showing that it "cannot for reasons stated present by affidavit facts essential to justify [its] opposition" (id, 56(f)). In the latter circumstance, the Court may deny summary judgment or "order a continuance to permit ... discovery to be had or make such other order as is just." Id., 56(f).[3] The fact that this case arises in the administrative review context does not alter the provisions of Rule 56 or relax in any way the standards that defendants must meet to prevail on summary judgment. *See Waldie v. Schlesinger,* 509 F.2d 508, 510 (D.C. Cir. 1974).

**ARGUMENT**

**THE COURT SHOULD GRANT PLAINTIFF DISCOVERY BECAUSE THE CURRENT RECORD IS INCOMPLETE AND UNRELIABLE, AND THERE ARE INDICIA OF BAD FAITH.**

The Court should grant plaintiff discovery for two overarching reasons. First, plaintiff's APA claim and factual showing satisfy the standards set forth by the Court of Appeals for the allowance of discovery in support of such claims. *See, e.g., James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1095 (D.C. Cir. 1996); *Esch v. Yeutter,* 876 F.2d 976, 991-93 (D.C. Cir. 1989). Second, plaintiff's constitutional claims are *collateral to and independent of* his APA claim and merit discovery on their own terms -- whether or not discovery is allowed as a matter of administrative law.

For the reasons set forth more fully below, plaintiff seeks and should be allowed

---

[3] In this case, there has been no discovery at all. *See* Sched. Ord.

discovery with respect to the following:

    a. which versions of which regulations were actually applied to plaintiff at each stage of the administrative proceedings in question;

    b. what additional allegations of retaliation and/or discrimination were filed but not investigated by defendant;

    c. whether any appeals were filed with respect to the underlying challenged action;

    d. what information was expressly considered by (i) the Office for Civil Rights during those proceedings, (ii) the defendant's top level supervising official(s) located at the OCR Kansas City office, and (iii) the defendant's top level supervising official(s) located in Washington, D.C.;

    e. what constitutes the complete and discrete record for each of the three administrative proceedings;

    f. what information defendants considered or failed to consider in assessing whether that had "probable cause," within the meaning of DOJ Directive 28 CFR Part 35, to pursue charges against Webster University;

    g. whether the defendants maintain a favorable treatment policy towards respondents in 28 CFR Part 35 complaint proceedings;

    h. whether the defendants intentionally misrepresented the facts and state of the record to this Court;

    i. whether defendants excluded from the record material evidence that properly should be considered part of the record; and

    j. whether plaintiff has been treated in an evenhanded manner without any

discriminatory animus based on the fact of his physical disability or participation in a protected activity, or both. *Cf. Above*, defendant's discriminatory practice of withholding Federal student aid.

### 1. Plaintiff Is Entitled To Discovery In Support Of His APA Claim.

In his APA claim, plaintiff has alleged, in part, that defendants:

1. pursued allegations of retaliation conduct against him in the absence of "credible information" (within the meaning of Section 504 regulations);

2. failed to follow mandatory fact-finding procedures,

3. exercised threats, coercion, and other forms of improper duress upon Plaintiff West (and others) whom they interrogated and upon whose allegations and testimony they relied;

4. introduced new and different charges against University during the course of his OCR proceeding;

5. failed to inform plaintiff (and those whom they interrogated) of the terms of the defendant's new policy on physical disability discrimination and retaliation,

6. deprived plaintiff a reasonable opportunity to prepare and present a defense;

7. failed to provide plaintiff with complete and relevant documents to assist him in exercising the procedural and substantive rights guaranteed to him by applicable laws and regulations, and

8. failed to conduct a full and impartial investigation prior to issuing defendant's findings of fact and conclusions of law against University and allowing University to continue to subject Plaintiff to unwarranted suspensions from University -- that ultimately deny plaintiff a reasonable opportunity to complete his academic degree. *See* Compl.

Even on the basis of the current record and available facts, these are colorable, if not compelling, claims. Under settled law, plaintiff should be allowed discovery to support them further and -- even more fundamentally -- to determine what the true administrative record is."  [4]

---

[4] Plaintiff does not require discovery in support of all of his arguments and claims. For

### A. The Law Allows Discovery in Support of APA Claims in Proper Cases.

The D.C. Circuit has held that, "[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C. Cir. 1984). "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case." *Id.* Typically, "[t]he administrative record includes all materials 'compiled' by the agency that were 'before the agency at the time the decision was made.'" *Madison,* 82 F.')d at 1095 (citations omitted). Thus, at a minimum, the reviewing court must be satisfied that it has all such materials. *Id.*

However, courts have also recognized limited circumstances under which it is appropriate to allow discovery or to supplement the record. In relevant part, these circumstances include: (1) where "background information" is necessary in order to determine whether the agency considered all of the relevant factors" *(Madison,* 82 F.3d at 1095); (2) where "agency action is not adequately explained in the record before the court" *(Esch,* 876 F.2d at 991); (3) where "the agency failed to consider factors which are relevant to its final decision" or, conversely, "considered evidence which it failed to include in the record" *(id.);* (4) where the agency "deliberately or negligently excluded" information that may have been "adverse to its decision" *(Madison,* 82 F.3d at 1095); (5) where there is a

---

example, he does not require discovery in support of his free speech claims, and the discovery that he seeks in support of his APA claim should equally serve his due process claims.

8

strong showing of "bad faith" by the agency (id); and (6) where the plaintiff demonstrates "other 'unusual circumstances'" (id).

Plaintiff is prepared to present arguments on those issues for which he does not seek discovery (and in opposition to defendants' arguments) when the Court orders briefing on the merits following the close (or denial) of discovery.

**B. Discovery Is Proper and Appropriate Here.**

All of the foregoing circumstances are present here. First, it is not clear whether the record as submitted by defendants contains "neither more nor less information" than the relevant officials had or considered when they made their decisions at the OCR or appeal proceedings. *Walter O. Boswell Memorial Hosp.*, 749 F.2d at 792. Instead, the current record is confused, unclear, and misleading. Defendant provides no certification nor annexed any volumes that constitute a true, complete, and accurate copy of the administrative file concerning the no probable cause and administrative dismissal of plaintiff's charges against the University. On its face, this lack of certification makes no distinction between the OCR proceedings or the appeal records and is both ambiguous and incomplete. *See Generally*, Def. Mem. It seems to indicate that defendants have produced either (1) an undifferentiated copy of the OCR records (but not the appeal to Director's own record) or (2) the OCR's own record (but not all of the allegations filed against University records).

Defendants' failure to differentiate between the proceedings, and to provide separate and complete records for each, is highly problematic. For example, the Court cannot determine what defendants did at each stage of the OCR proceeding, and assess the legitimacy and adequacy of their handling of that proceeding, if it cannot determine which

9

materials were a part of that proceeding.[5] The picture is even more confused when one considers that defendant provides no certifications. The defendant offered no explanation for the lack of certification and incomplete copy of the administrative record materials pertaining to either the FOIA requests, the FOIA appeals, the OCR administrative proceedings, or the discriminatory practice of withholding plaintiff's Federal student aid until the last week of University classes.

In addition to discovery regarding the proper composition of the record itself, discovery is further warranted by several of the *Madison and Esch* factors. First, essential background information is missing. It is unclear from the current record which versions of which regulations defendant applied to plaintiff at each of the proceedings in question. For example, in their answer, defendant repeatedly takes issue without quotation of the DoJ's directive, 28 CFR Part 35, asserting that certain key language does not appear in that document, i.e., that OCR administrative proceedings are unreviewable by the district court. *See, e.g.*, Def. Mem., 14. Because the language that plaintiff has quoted does appear in the directive, defendants' answer raises the strong presumption that defendants applied an inapplicable and outdated version to plaintiff. *cf.* 42 U.S.C. Section 12131 *et seq*. Plaintiff should be allowed discovery to determine which versions of which regulations were applied at each stage of the proceedings.[6] Where the organic [28 CFR Part 35] statute is silent on the subject of judicial review, presumption that review is available coupled with absence of any indication in statute that decision is wholly within the discretion of agency or that review

---

[5] Not only are the documents jumbled together in no apparent order, but numerous documents appear to be split or divorced from their attachments. *See, e.g.*, Exhibit 6, p.1. 59, Defendants' labeling of the documents in their table of contents also appears largely random; many of the "exhibits" plainly contain multiple and often unrelated documents. *See, e.g.*, Exhibit 6, p. 2.

[6] Attachment to the Rule 56(f) Declaration of Michael West is a true copy of 28 CFR Part 35.

is otherwise precluded, leads to conclusion that judicial review is available under general grant of jurisdiction over cases involving federal questions. *Maryland Dept. Human Resources v. Dept. of Health and Human Svcs.*, 763 F2d 1441 (DC App. 1985).

Second. and most importantly, there is *prima facie* (if not conclusive) evidence of bad faith and improper conduct on the part of the defendant's top level supervising officials at issue, and plaintiff should be allowed discovery to determine whether defendant had excluded evidence that demonstrates this bad faith, or conversely, had declined to consider substantial evidence of retaliation. *See Madison*, 82 F.3d at 1095, *Esch.* 876 F.2d at 991. Even the current record suggests reason to believe that defendants (1) improperly changed their charges against University during the OCR proceedings, (2) improperly credited witnesses and allegations that they should have known were not "credible information" and (3) improperly pressured and intimidated their principal witness, Plaintiff West. *See supra*, pages 3-9. By any fair assessment, the evidence suggests that this is an extraordinary case, and plaintiff has presented colorable allegations that merit further inquiry.

Indeed, the "West e-mail" alone raises substantial questions about the propriety of defendants' actions. Def. Ex. 6, p. 1. In this document, defendant acknowledged her *"office received request for reconsideration pertaining to several allegations of retaliation committed against [plaintiff] by Webster University."* *Id.* Yet within the defendant's memo, the defendant clearly stated that no administrative appeal was received. Def. Mem., 7. Similarly, defendant acknowledged *the two plus years that this agency has allowed this University to [] repeatedly harass [plaintiff] when compared to the several reported and separate claims of retaliation that have either have not been investigated or have not been timely to ....* *Id.* Upon information and belief, this evidence supports an administrative due process violation. The defendant also acknowledged that plaintiff *relied upon all, papers,*

11

*motions, and the like that have been filed in this case. Id.* As such, there is evidence in the record of the existence of additional materials of the OCR proceedings. However, no such materials appear in the record.

Similarly, the "Weston email" raises more substantial questions about the propriety of defendant's actions. Def. Ex. 6, 4. "Sallie Mae ...approv[ed] [the] US Funds on February 9" ... but "disbursed the loan [on] February 23, 2005." *Id.* In contrast, plaintiff had previously interviewed a different Sallie Mae representative which indicated that the Federal student aid would be disbursed within one (1) day from the "approval" date. There appears to be a significant discrepancy in these facts.

Alone, these disturbing documents merit further discovery and reinforces the inferences already apparent in the current record that a profound injustice has occurred. Defendant seems to be telling plaintiff (and this Court) that if protected from further discrimination and retaliation, plaintiff will not be protected from "harm" (and is unwilling to recant this apparently false testimony). Def. memo, p. 1.

### C. Plaintiff Has Actionable Substantive and Procedural Rights Under the APA.

Despite the patent need for discovery, defendant asserts that facts are "immaterial" to the disposition of their motion. For example, in addressing plaintiff's statutory claim, defendant contends that the Secretary of Education decisions plaintiff challenges are *unreviewable* under the APA and that neither the 42 U.S.C. 12131 *et seq* statute nor the [implementing DoJ] directive grants complainants a right to bring a court challenge to a DOE proceeding. Def. Mem., 24 (emphasis added). Similarly, defendants contend that plaintiff can establish no set of facts that would entitle him to relief on any of his due

process, equal protection, or free speech claims because he had *no such constitutional rights* in any of the proceedings at issue. See Def Mem., 2. Settled law repudiates these extreme contentions and supports plaintiff's request for discovery.

It is "well settled that an agency" -- whether military or civilian --"is legally bound to respect its own regulations, and commits procedural errors if it fails to abide them." *Esch*, 876 F.2d at 991 (citations omitted); *see also Dilley, 603* F.2d at 920 (ordering reinstatement of discharged Army Reservists) ("It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful.") (citations omitted). Here, detailed statutory and regulatory procedures governed the four administrative proceedings at issue. Whether defendants have complied with these laws and regulations, or have been arbitrary and capricious, are questions that are plainly reviewable by this Court. *See Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir 1979, *amended*, 627 F.2d 407 (D.C. Cir 1980).[7]

Additionally, the district court should possess jurisdiction over matter where Secretary of Education decision to terminate student's participation in master's degree program because whether student was in compliance with terms and conditions of Federal Student loan program contract has to be decided on basis of facts and law, and was not left to unfettered discretion of agency.[8] *See Payton v. USDA,* 337 F3d 1163 (10th Cir. 2003). As

---

[7] In addressing plaintiff's due process claims, defendant implicitly argues that plaintiff has *no due process rights* concerning his investigation by the defendant's command, her subsequent administrative procedures, or her discriminatory practices of terminating this plaintiff student from his master's degree program. *Cf.* Def. Memo, 7, 11-15 (emphasis added).

[8] In response to his equal protection claim, they likewise implicitly assert, without a single citation to the record, that "equal protection was not implicated" here. *Generally,* Def. Memo. Similarly, in addressing plaintiff's First Amendment claims, defendant implicitly insist (again, without any citations to the record) that "[p]laintiff mistakenly claims first

a direct and proximate result of defendant's failure to timely disburse Federal student financial aid, plaintiff was injured by termination from his degree program -- which not only affects his interest in post-secondary education and career interest, but he lost meaningful associations with his peers.

## II. Plaintiff Is Separately Entitled To Discovery On His Constitutional Claims.

Plaintiff also seeks discovery in support of his equal protection and due process claims. Specifically, for his equal protection claim, plaintiff seeks to determine whether the proceedings against him were infected by invidious discrimination or motivated by antipathy toward the fact that he was an individual with physical disability. For his due process claims, he seeks the same discovery that he has requested in support of his APA claim, as set forth in Part I above.

Plaintiff is separately entitled to discovery in support of these claims. Plaintiff's constitutional claims present legal challenges that are *collateral to* and *independent of* his administrative claims. These claims lie -- and merit discovery on their own terms -- regardless of how the Court ultimately acts on plaintiff's APA claim.

As the Supreme Court held in *Webster v. Doe,* 486 U.S. 592 (1988), a constitutional challenge to an administrative action may proceed on its own terms, even where an APA challenge is precluded or is not meritorious. *See* 486 U.S. at 603-05 (allowing gay CIA employee to proceed with constitutional challenges to his administrative discharge -- with

---

amendment protection" for a category of "conduct" that is facially entitled to no such protection. Id., 2-4

discovery, if appropriate -- even though, under the facts and law at issue there, his APA claim was not justiciable); *see also Kartseva v. Department of State*, 37 F.3d 1524, 1525-27 (D.C. Cir. 1994) (allowing discovery on constitutional claim following dismissal of APA claim).[9] Here, plaintiff asserts that defendants violated his constitutional rights in pursuing the subject proceedings and in formulating the current record; that their actions are thus void; and that evidence of these constitutional violations lies outside the record. To hold that the adjudication of such claims must be limited to the very record that they challenge would deny plaintiff the collateral, constitutional review that his complaint seeks and to which he is lawfully entitled. Moreover, the ability of an aggrieved individual seeking redress to pursue a collateral, constitutional challenge to a Federal agency's policy or proceeding is well established.[10] In fact, in the context of *constitutional* claims, courts do not require the showing of special circumstances that has been required, in the APA context, by cases like *Esch and Madison*..[11] Accordingly, plaintiff should be allowed discovery in support of his constitutional claims under an ordinary construction of the Federal Rules.

**A. Plaintiff's Equal Protection Claim Merits Discovery.**

---

[9] *Webster* further held "that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 486 U.S. at 603 (citation omitted). There is no such express prohibition in any of the statutes at issue here, and as noted below, numerous courts, including this Court, have previously entertained constitutional challenges.

[10] *See, e.g, McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494-99 (1991) (allowing collateral due process challenge to INS proceedings and procedures, where one of plaintiffs' central allegations was that administrative record was inadequate and where barring such challenge would effectively have denied any meaningful judicial review); *Mathews v. Eldridge*, 424 U.S. 319, 329-32 (1976) (to same effect); *see also Thunder Basin Coal Co. v. Reich, 510* U.S. 200, 212-13 (1994).

[11] *See especially Cammermeyer*, 850 F. Supp. at 914-18; *Dahl*, 830 F. Supp. at 1322-28; *see also Emory*, 819 F.2d at 214; *Crawford*, 531 F.2d at 1119-24; *Able II*, 968 F. Supp. at 852.

It is settled law that if government action is grounded on illegitimate considerations, it cannot stand.[12] Recently, the Supreme Court has also held that equal protection scrutiny applies to discrimination based on sexual orientation. *See Romer v. Evans*, 116 S. Ct. 1620 (1996) (invalidating state constitutional amendment where record "raise[d] the inevitable inference that the disadvantage imposed [by the provision was] born of animosity toward [gays and lesbians]"). It follows that if plaintiff can establish that he suffered invidious discrimination, as a person with physical disability, his equal protection claim should prevail.

Absent discovery, it is premature to argue over the proper level of constitutional scrutiny to apply to plaintiff's equal protection claim. For present purposes, it is sufficient to note that defendants are wrong to suggest that a *Cannon* standard applies *(see* Def Mem., 11-14). At a minimum, the Court will be required to apply the rational-basis test employed in *Romer*, which held (without deciding whether a more rigorous standard might apply) that the law at issue failed even that most deferential level of review. *See* 116 S. Ct. at 1627-29.

Nonetheless, defendants' treatment of plaintiff's equal protection claim overlooks the factual foundation of that claim and itself rests on unsupported factual assertions. Without any evidentiary support, defendants implicitly argue that the "Investigation and processing of plaintiff Federal student loan disbursement was an even-handed application to him of the DOJ's zero-tolerance policy against retaliation or physical disability harassment;" and that he was "Investigated and processed in the same manner" as he would have been if he had not "filed a complaint with the U.S. Department of Education." *See* Def. Mem., 7 These are

---

[12] *See, e.g, McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494-99 (1991) (allowing collateral due process challenge to INS proceedings and procedures, where one of plaintiffs' central allegations was that administrative record was inadequate and where barring such challenge would effectively have denied any meaningful judicial review); *Mathews v. Eldridge*, 424 U.S. 319, 329-32 (1976) (to same effect); *see also Thunder Basin Coal Co. v. Reich, 510* U.S. 200, 212-13 (1994).

precisely the sorts of factual assertions that plaintiff challenges and that cannot be made or accepted in the absence of any supporting evidence. Plaintiff is entitled to discovery on the issue of whether, in fact, he was treated in an evenhanded manner and without any anti-retaliatory or physical disability animus. There is at least colorable evidence to the contrary.

For example, it is difficult to understand defendant's first allegation" against plaintiff -- that the University's proffered reason for the time required for you to receive your loan was not pretext for retaliation -- and defendants' willingness to prosecute that allegation, and then, subsequently, to impose a University suspension on the basis of it -- as anything other than "not out of the ordinary." Def. Mem., 7. On its face, although it speak volumes about Defendant Spellings and the Federal student loan program, this accusation says nothing about defendant's discriminatory practice by unfairly withholding Federal student aid from an individual that was otherwise qualified to receive it in a timely and beneficial manner. To ignore that this case involves the issue and stigma of being physically impaired and to accept defendants' unsupported suggestion that it presents a run-of-the-mill "physical disability harassment" matter is disingenuous.

## B. Plaintiff's Due Process Claims Merit Discovery.

As noted above, the discovery that plaintiff seeks in support of His APA claim should equally serve his due process claim. Both this Court and the D.C. Circuit have recognized that federal agency proceedings implicate due process rights, and thus, plaintiff's claim is indisputably cognizable.[13] "Why could the defendant not disburse plaintiff's Federal student financial aid before the last week of classes?" remains a question this district court should

---

[13] Students maintain legally protected property interest in career advancement and post-secondary education implicating due process (citations omitted).

17

consider.

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiff the opportunity for discovery in support of his claims and stay defendant's motion for dismissal/summary judgment pending the completion of discovery.

Respectfully submitted,

_____
Michael West, *pro se*
P.O. Box 1935
St. Charles, MO 63302
No phone


### CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was placed in the U.S. mail, postage prepaid, first class this 31st day of October 2006, to:

Oliver McDaniel
AUSA, Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530

_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL WEST,<br><br>   Plaintiff,<br><br>v.<br><br>MARGERET SPELLINGS,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) Civil Case No. 06-1012 (RMC)<br>)<br>)<br>)<br>)<br>) |

## RULE 56(F) DECLARATION OF MICHAEL WEST

Michael West, pro se, hereby declares as follows:

1. I am the plaintiff and submit this declaration pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, in support of plaintiff's request for discovery.

2. On the basis of careful assessment of plaintiff's allegations and the current record, I believe that to present his claims fully and responsibly, plaintiff needs discovery for the reasons set forth in Plaintiff's Rule 56(f) Memorandum.

3. In particular, discovery is necessary to determine:

 A. which versions of which regulations were actually applied to plaintiff at each stage of the administrative proceedings in question;

 B. what additional allegations of retaliation and/or discrimination were filed but not investigated by defendant;

 C. whether any appeals were filed with respect to the underlying challenged action;

 D. what information was expressly considered by (i) the Office for Civil Rights during those proceedings, (ii) the defendant's supervising top official located at the OCR Kansas City office, and (iii) the defendant's top level supervising officials located in Washington, D.C.;

 D. what constitutes the complete and discrete record for each of the three administrative

proceedings;

E. what information defendants considered or failed to consider in assessing whether that had "probable cause," within the meaning of DOJ Directive 28 CFR Part 35, to pursue charges against Webster University;

F. whether the defendants maintain a favorable treatment policy towards respondents in 28 CFR Part 35 complaint proceedings;

G. whether the defendants intentionally misrepresented the facts and state of the record to this Court;

H. whether defendants excluded from the record material evidence that properly should be considered part of the record;

I. whether defendant's practice of withholding Federal Student financial aid until the last week of class constitutes a discriminatory practice in violation of federal disability laws; and

I. whether plaintiff has been treated in an evenhanded manner without any discriminatory animus based on the fact of his physical disability.

4. Attached to this declaration is a true copy of the U.S. Department of Justice's ("DOJ's") applicable 28 CFR Part 35 statute.

5. For these reasons, plaintiff reasonably needs and should be allowed to serve request for production not exceeding 25 in number. In addition, plaintiff reasonably needs and should be allowed to serve 25 interrogatories and pursue 5 depositions, as would be customary in cases - like this one - that have been assigned to the Standard Track.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 31st day of October 2006.

_____
Michael West