for "historic and cultural preservation" functions appropriately belongs with the Department of Interior rather than the Department of Education. The Department of Justice also agrees with the Department of Education that "museums" more appropriately should be delegated to the Department of Interior, and that "preschool and daycare programs" more appropriately should be assigned to the Department of Health and Human Services, rather than to the Department of Education. The final rule reflects these decisions.

The Department of Commerce opposed its listing as the designated agency for "commerce and industry, including general economic development, banking and finance, consumer protection, insurance, and small business". The Department of Commerce cited its lack of a substantial existing section 504 enforcement program and experience with many of the specific functions to be delegated. The Department of Justice accedes to the Department of Commerce's position, and has assigned itself as the designated agency for these functions.

In response to a comment from the Department of Health and Human Services, the regulation's category of "medical and nursing schools" has been clarified to read "schools of medicine, dentistry, nursing, and other health-related fields". Also in response to a comment from the Department of Health and Human Services, "correctional institutions" have been specifically added to the public safety and administration of justice functions assigned to the Department of Justice.

The regulation also assigns the Department of Justice as the designated agency responsible for all State and local government functions not assigned to other designated agencies. The Department of Justice, under an agreement with the Department of the Treasury, continues to receive and coordinate the investigation of complaints filed under the Revenue Sharing Act. This entitlement program, which was terminated in 1986, provided civil rights compliance jurisdiction for a wide variety of complaints regarding the use of Federal funds to support various general activities of local governments. In the absence of any similar program of Federal financial assistance administered by another Federal agency, placement of designated agency responsibilities for miscellaneous and otherwise undesignated functions with the Department of Justice is an appropriate continuation of current practice.

The Department of Education objected to the proposed rule's inclusion of the functional area of "arts and humanities" within its responsibilities, and the Department of Housing and Urban Development objected to its proposed designation as responsible for activities relating to rent control, the real estate industry, and housing code enforcement. The Department has deleted these areas from the lists assigned to the Departments of Education and Housing and Urban Development, respectively, and has added a new paragraph (c) to section 35.190, which provides that the Department of Justice may assign responsibility for components of State or local governments that exercise responsibilities, regulate, or administer services, programs, or activities relating to functions not assigned to specific designated agencies by paragraph (b) of this section to other appropriate agencies. The Department believes that this approach will provide more flexibility in determining the appropriate agency for investigation of complaints involving those components of State and local governments not specifically addressed by the listings in paragraph (b). As provided in {{35.170 and 35.171, complaints filed with the Department of Justice will be referred to the apropriate agency.

Several commenters proposed a stronger role for the Department of Justice, especially with respect to the receipt and assignment of complaints, and the overall monitoring of the effectiveness of the enforcement activities of Federal agencies. As discussed above, {{35.170 and 35.171 have been revised to provide for referral of complaints by the Department of Justice to appropriate enforcement agencies. Also, language has been added to {35.190(a) of the final regulation stating that the Assistant Attorney General shall provide policy guidance and interpretations to designated agencies to ensure the consistent

and effective implementation of this part.

*List of Subjects in 28 CFR Part 35*

Administrative practice and procedure, Alcoholism, Americans with disabilities, Buildings, Civil rights, Drug abuse, Handicapped, Historic preservation, Intergovernmental relations, Reporting and recordkeeping requirements.

By the authority vested in me as Attorney General by 28 U.S.C. 509, 510, 5 U.S.C. 301, and section 204 of the Americans with Disabilities Act, and for the reasons set forth in the preamble, chapter I of Title 28 of the Code of Federal Regulations is amended by adding a new Part 35 to read as follows:

Part 35 - NONDISCRIMINATION ON THE BASIS OF DISABILITY IN STATE AND LOCAL GOVERNMENT SERVICES

Subpart A -- General

Sec.

35.101 Purpose.

35.102 Application.

35.103 Relationship to other laws.

35.104 Definitions.

35.105 Self-evaluation.

35.106 Notice.

35.107 Designation of responsible employee and adoption of grievance procedures.

35.108 - 35.129 [Reserved]

Subpart B -- General Requirements

35.130 General prohibitions against discrimination.

35.131 Illegal use of drugs.

35.132 Smoking.

35.133 Maintenance of accessible features.

35.134 Retaliation or coercion.

35.135 Personal devices and services.

35.136 - 35.139 [Reserved]

Subpart C -- Employment

35.140 Employment discrimination prohibited.

35.141 - 35.148 [Reserved]

Subpart D -- Program Accessibility

35.149 Discrimination prohibited.

35.150 Existing facilities.

35.151 New construction and alterations.

35.152 - 35.159 [Reserved]

Subpart E -- Communications

35.160 General.

35.161 Telecommunication devices for the deaf (TDD's).

35.162 Telephone emergency services.

35.163 Information and signage.

35.164 Duties.

35.165 - 35.169 [Reserved]

Subpart F -- Compliance Procedures

35.170 Complaints.

35.171 Acceptance of complaints.

35.172 Resolution of complaints.

35.173 Voluntary compliance agreements.

35.174 Referral.

35.175 Attorney's fees.

35.176 Alternative means of dispute resolution.

35.177 Effect of unavailability of technical assistance.

35.178 State immunity.

35.179 - 35.189 [Reserved]

Subpart G -- Designated Agencies

35.190 Designated agencies.

35.191 - 35.999 [Reserved]

Appendix A to Part 35 -- Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services (Published July 26, 1991)

Authority: 5 U.S.C. 301; 28 U.S.C. 509, 510; Title II, Pub. L. 101-336 (42 U.S.C. 12134).

**Subpart A -- General**

**{35.101 Purpose.**

The purpose of this part is to effectuate subtitle A of title II of the Americans with Disabilities Act of 1990, which prohibits discrimination on the basis of disability by public entities.

**{35.102 Application.**

(a) Except as provided in paragraph (b) of this section, this part applies to all services, programs, and activities provided or made available by public entities.

(b) To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA, they are not subject to the requirements of this part.

**{35.103 Relationship to other laws.**

(a) *Rule of interpretation*. Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 or the regulations issued by Federal agencies pursuant to that title.

(b) *Other laws*. This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them.

**{35.104 Definitions.**

For purposes of this part, the term --

*Act* means the Americans with Disabilities Act (Pub. L. 101-336, 104 Stat. 327, 42 U.S.C. 12101-12213 and 47 U.S.C. 225 and 611).

*Assistant Attorney General* means the Assistant Attorney General, Civil Rights Division, United States Department of Justice.

*Auxiliary aids and services* includes--

(1) Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(2) Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

*Complete complaint* means a written statement that contains the complainant's name and address and describes the public entity's alleged discriminatory action in sufficient detail to inform the agency of the nature and date of the alleged violation of this part. It shall be signed by the complainant or by someone authorized to do so on his or her behalf. Complaints filed on behalf of classes or third parties shall describe or identify (by name, if possible) the alleged victims of discrimination.

*Current illegal use of drugs* means illegal use of drugs that occurred recently enough to justify a reasonable belief that a person's drug use is current or that continuing use is a real and ongoing problem.

*Designated agency* means the Federal agency designated under subpart G of this part to oversee compliance activities under this part for particular components of State and local governments.

*Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

(1)(i) The phrase *physical or mental impairment* means --

(A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine;

(B) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(ii) The phrase *physical or mental impairment* includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

(iii) The phrase *physical or mental impairment* does not include homosexuality or bisexuality.

(2) The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(3) The phrase *has a record of such an impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

(4) The phrase *is regarded as having an impairment* means-

(i) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a public entity as constituting such a limitation;

(ii) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a public entity as having such an impairment.

(5) The term *disability* does not include --

(i) Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(ii) Compulsive gambling, kleptomania, or pyromania; or

(iii) Psychoactive substance use disorders resulting from current illegal use of drugs.

*Drug* means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812).

*Facility* means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.

*Historic preservation programs* means programs conducted by a public entity that have preservation of historic properties as a primary purpose.

*Historic properties* means those properties that are listed or eligible for listing in the National Register of Historic Places or properties designated as historic under State or local law.

*Illegal use of drugs* means the use of one or more drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). The term *illegal use of drugs* does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

*Individual with a disability* means a person who has a disability. The term individual with a disability does not include an individual who is currently engaging in the illegal use of drugs, when the public entity acts on the basis of such use.

*Public entity* means --

(1) Any State or local government;

(2) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(3) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act).

*Qualified individual with a disability* means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of

auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Qualified interpreter* means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary.

*Section 504* means section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112, 87 Stat. 394 (29 U.S.C. 794)), as amended.

*State* means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

{35.105 Self-evaluation.

(a) A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

(b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

(c) A public entity that employs 50 or more persons shall, for at least three years following completion of the self-evaluation, maintain on file and make available for public inspection:

(1) A list of the interested persons consulted;

(2) A description of areas examined and any problems identified; and

(3) A description of any modifications made.

(d) If a public entity has already complied with the self-evaluation requirement of a regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this section shall apply only to those policies and practices that were not included in the previous self- evaluation.

{35.106 Notice.

A public entity shall make available to applicants, participants, beneficiaries, and other interested persons information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity, and make such information available to them in such manner as the head of the entity finds necessary to apprise such persons of the protections against discrimination assured them by the Act and this part.

{35.107 Designation of responsible employee and adoption of grievance procedures.

(a) *Designation of responsible employee.* A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to it alleging its noncompliance with this part or alleging any actions that would be prohibited by this part. The public entity shall make available to all interested individuals the name, office address, and telephone number of the employee or employees designated pursuant to this paragraph.

(b) *Complaint procedure.* A public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part.

{{35.108 - 35.129 [Reserved]

Subpart B — General Requirements

{35.130 General prohibitions against discrimination.

(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

(b)(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability --

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;

(v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

(vi) Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;

(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

(2) A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities.

(3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:

(i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

(ii) That have the purpose or effect of defeating or

substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

(iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

(4) A public entity may not, in determining the site or location of a facility, make selections --

(i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or

(ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities.

(5) A public entity, in the selection of procurement contractors, may not use criteria that subject qualified individuals with disabilities to discrimination on the basis of disability.

(6) A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part.

(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of

the service, program, or activity being offered.

(c) Nothing in this part prohibits a public entity from providing benefits, services, or advantages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.

(d) A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

(e)(1) Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept.

(2) Nothing in the Act or this part authorizes the representative or guardian of an individual with a disability to decline food, water, medical treatment, or medical services for that individual.

(f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

```
(g)   A public entity shall not exclude or otherwise deny equal
```

services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

### {35.131 Illegal use of drugs.

(a) *General.* (1) Except as provided in paragraph (b) of this section, this part does not prohibit discrimination against an individual based on that individual's current illegal use of drugs.

(2) A public entity shall not discriminate on the basis of illegal use of drugs against an individual who is not engaging in current illegal use of drugs and who--

(i) Has successfully completed a supervised drug rehabilitation program or has otherwise been rehabilitated successfully;

(ii) Is participating in a supervised rehabilitation program; or

(iii) Is erroneously regarded as engaging in such use.

(b) *Health and drug rehabilitation services.* (1) A public entity shall not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services.

(2) A drug rehabilitation or treatment program may deny participation to individuals who engage in illegal use of drugs while they are in the program.

(c) *Drug testing.* (1) This part does not prohibit a public entity from adopting or administering reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an

individual who formerly engaged in the illegal use of drugs is not now engaging in current illegal use of drugs.

(2) Nothing in paragraph (c) of this section shall be construed to encourage, prohibit, restrict, or authorize the conduct of testing for the illegal use of drugs.

### {35.132 Smoking.

This part does not preclude the prohibition of, or the imposition of restrictions on, smoking in transportation covered by this part.

### {35.133 Maintenance of accessible features.

(a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.

### {35.134 Retaliation or coercion.

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

### {35.135 Personal devices and services.

This part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing.

### {{35.136 - 35.139 [Reserved]

### Subpart C -- Employment

### {35.140 Employment discrimination prohibited.

(a) No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.

(b)(1) For purposes of this part, the requirements of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 CFR part 1630, apply to employment in any

service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I.

(2) For the purposes of this part, the requirements of section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Department of Justice in 28 CFR Part 41, as those requirements pertain to employment, apply to employment in any service, program, or activity conducted by a public entity if that public entity is not also subject to the jurisdiction of title I.

{{35.141 - 35.148 [Reserved]

**Subpart D -- Program Accessibility**

{35.149 **Discrimination prohibited.**

Except as otherwise provided in {35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

{35.150 **Existing facilities.**

(a) *General.* A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not --

(1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;

(2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or

(3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with {35.150(a) of this part would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

(b) *Methods.* (1) *General.* A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing

facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of {35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.

(2) *Historic preservation programs.* In meeting the requirements of {35.150(a) in historic preservation programs, a public entity shall give priority to methods that provide physical access to individuals with disabilities. In cases where a physical alteration to an historic property is not required because of paragraph (a)(2) or (a)(3) of this section, alternative methods of achieving program accessibility include --

(i) Using audio-visual materials and devices to depict those portions of an historic property that cannot otherwise be made accessible;

(ii) Assigning persons to guide individuals with handicaps into or through portions of historic properties that cannot otherwise be made accessible; or

(iii) Adopting other innovative methods.

(c) *Time period for compliance.* Where structural changes in facilities are undertaken to comply with the obligations established under this section, such changes shall be made within three years of the effective date of this part, but in any event as expeditiously as possible.

(d) *Transition plan.* (1) In the event that structural changes to facilities will be undertaken to achieve program accessibility, a public entity that employs 50 or more persons shall develop, within six months of the effective date of this part, a transition plan setting forth the steps necessary to complete such changes. A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the development of the transition plan by submitting comments. A copy of the transition plan shall be made available for public inspection.

(2) If a public entity has responsibility or authority over streets, roads, or walkways, its transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

(3) The plan shall, at a minimum --

(i) Identify physical obstacles in the public entity's facilities that limit the accessibility of its programs or activities to individuals with disabilities;

(ii) Describe in detail the methods that will be used to make the facilities accessible;

(iii) Specify the schedule for taking the steps necessary to achieve compliance with this section and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and

(iv) Indicate the official responsible for implementation of the plan.

(4) If a public entity has already complied with the transition plan requirement of a Federal agency regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this paragraph shall apply only to those policies and practices that were not included in the previous transition plan.

{35.151 **New construction and alterations.**

(a) *Design and construction.* Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.

(b) *Alteration.* Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

(c) *Accessibility standards.* Design, construction, or alteration of facilities in conformance with the Uniform Federal Accessibility Standards (UFAS) (Appendix A to 41 CFR Part 101-19.6) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG) (Appendix A to the Department of Justice's final rule implementing title III of the ADA, ____ F.R. ____) shall be deemed to comply with the requirements of this section with respect to those facilities, except that the elevator exemption contained at {4.1.3(5) and {4.1.6(1)(j) of ADAAG shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

(d) *Alterations: Historic properties.* (1) Alterations to historic properties shall comply, to the maximum extent feasible, with {4.1.7 of UFAS or {4.1.7 of ADAAG.

(2) If it is not feasible to provide physical access to an historic property in a manner that will not threaten or destroy the historic significance of the building or facility, alternative methods of access shall be provided pursuant to the requirements of {35.150.

(e) *Curb ramps.* (1) Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.

(2) Newly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways.

{{35.152 - 35.159 [Reserved]

**Subpart E — Communications**

{35.160 **General.**

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.

{35.161 Telecommunication devices for the deaf (TDD's).

Where a public entity communicates by telephone with applicants and beneficiaries, TDD's or equally effective telecommunication systems shall be used to communicate with individuals with impaired hearing or speech.

{35.162 Telephone emergency services.

Telephone emergency services, including 911 services, shall provide direct access to individuals who use TDD's and computer modems.

{35.163 Information and signage.

(a) A public entity shall ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of accessible services, activities, and facilities.

(b) A public entity shall provide signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to a location at which they can obtain information about accessible facilities. The international symbol for accessibility shall be used at each accessible entrance of a facility.

{35.164 Duties.

This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

{{35.165 - 35.169 [Reserved]

Subpart F - Compliance Procedures

{35.170 Complaints.

(a) *Who may file.* An individual who believes that he or she or a specific class of individuals has been subjected to discrimination on the basis of disability by a public entity may, by himself or herself or by an authorized representative, file a complaint under this part.

(b) *Time for filing.* A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the designated agency for good cause shown. A complaint is deemed to be filed under this section on the date it is first filed with any Federal agency.

(c) *Where to file.* An individual may file a complaint with any agency that he or she believes to be the appropriate agency designated under subpart G of this part, or with any agency that provides funding to the public entity that is the subject of the complaint, or with the Department of Justice for referral as provided in {35.171(a)(2).

**{35.171 Acceptance of complaints.**

(a) *Receipt of complaints.* (1)(i) Any Federal agency that receives a complaint of discrimination on the basis of disability by a public entity shall promptly review the complaint to determine whether it has jurisdiction over the complaint under section 504.

(ii) If the agency does not have section 504 jurisdiction, it shall promptly determine whether it is the designated agency under subpart G of this part responsible for complaints filed against that public entity.

(2)(i) If an agency other than the Department of Justice determines that it does not have section 504 jurisdiction and is not the designated agency, it shall promptly refer the complaint, and notify the complainant that it is referring the complaint to the Department of Justice.

(ii) When the Department of Justice receives a complaint for which it does not have jurisdiction under section 504 and is not the designated agency, it shall refer the complaint to an agency that does have jurisdiction under section 504 or to the appropriate agency designated in subpart G of this part or, in the case of an employment complaint that is also subject to title I of the Act, to the Equal Employment Opportunity Commission.

(3)(i) If the agency that receives a complaint has section 504 jurisdiction, it shall process the complaint according to its procedures for enforcing section 504.

(ii) If the agency that receives a complaint does not have section 504 jurisdiction, but is the designated agency, it shall process the complaint according to the procedures established by this subpart.

(b) *Employment complaints.* (1) If a complaint alleges employment discrimination subject to title I of the Act, and

the agency has section 504 jurisdiction, the agency shall follow the procedures issued by the Department of Justice and the Equal Employment Opportunity Commission under section 107(b) of the Act.

(2) If a complaint alleges employment discrimination subject to title I of the Act, and the designated agency does not have section 504 jurisdiction, the agency shall refer the complaint to the Equal Employment Opportunity Commission for processing under title I of the Act.

(3) Complaints alleging employment discrimination subject to this part, but not to title I of the Act shall be processed in accordance with the procedures established by this subpart.

(c) Co    Nondiscrimination on the Basis of Disability

*complete complaints.* (1) A designated agency shall accept all complete complaints under this section and shall promptly notify the complainant and the public entity of the receipt and acceptance of the complaint.

(2) If the designated agency receives a complaint that is not complete, it shall notify the complainant and specify the additional information that is needed to make the complaint a complete complaint. If the complainant fails to complete the complaint, the designated agency shall close the complaint without prejudice.

{35.172 **Resolution of complaints.**

(a) The designated agency shall investigate each complete complaint, attempt informal resolution, and, if resolution is not achieved, issue to the complainant and the public entity a Letter of Findings that shall include --

(1) Findings of fact and conclusions of law;

(2) A description of a remedy for each violation found; and

(3) Notice of the rights available under paragraph (b) of this section.

(b) If the designated agency finds noncompliance, the procedures in {{35.173 and 35.174 shall be followed. At any time, the complainant may file a private suit pursuant to section 203 of the Act, whether or not the designated agency finds a violation.

{35.173 **Voluntary compliance agreements.**

(a) When the designated agency issues a noncompliance Letter of Findings, the designated agency shall--

(1) Notify the Assistant Attorney General by forwarding a copy of the Letter of Findings to the Assistant Attorney General; and

(2) Initiate negotiations with the public entity to secure compliance by voluntary means.

(b) Where the designated agency is able to secure voluntary compliance, the voluntary compliance agreement shall --

(1) Be in writing and signed by the parties;

(2) Address each cited violation;

(3) Specify the corrective or remedial action to be taken, within a stated period of time, to come into compliance;

(4) Provide assurance that discrimination will not recur; and

(5) Provide for enforcement by the Attorney General.

{35.174 **Referral.**

If the public entity declines to enter into voluntary compliance negotiations or if negotiations are unsuccessful, the designated agency shall refer the matter to the Attorney General with a recommendation for appropriate action.

{35.175 Attorney's fees.

In any action or administrative proceeding commenced pursuant to the Act or this part, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

{35.176 Alternative means of dispute resolution.

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Act and this part.

{35.177 Effect of unavailability of technical assistance.

A public entity shall not be excused from compliance with the requirements of this part because of any failure to receive technical assistance, including any failure in the development or dissemination of any technical assistance manual authorized by the Act.

{35.178 State immunity.

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

{{35.179 - 35.189 [Reserved]

Subpart G -- Designated Agencies

{35.190 Designated agencies.

(a) The Assistant Attorney General shall coordinate the compliance activities of Federal agencies with respect to State and local government components, and shall provide policy guidance and interpretations to designated agencies to ensure the consistent and effective implementation of the requirements of this part.

(b) The Federal agencies listed in paragraph (b)(1)-(8) of this section shall have responsibility for the implementation of subpart F of this part for components of State and local governments that exercise responsibilities, regulate, or administer services, programs, or activities in the following functional areas.

(1) *Department of Agriculture*: all programs, services, and regulatory activities relating to farming and the raising of livestock, including extension services.

(2) *Department of Education*: all programs, services, and regulatory activities relating to the operation of elementary and secondary education systems and institutions, institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and libraries.

(3) *Department of Health and Human Services*: all programs, services, and regulatory activities relating to the provision of health care and social services, including schools of medicine, dentistry, nursing, and other health-related schools, the operation of health care and social service providers and institutions, including "grass-roots" and community services organizations and programs, and preschool and daycare programs.

(4) *Department of Housing and Urban Development*: all programs, services, and regulatory activities relating to state and local public housing, and housing assistance and referral.

(5) *Department of Interior*: all programs, services, and regulatory activities relating to lands and natural resources, including parks and recreation, water and waste management, environmental protection, energy, historic and cultural preservation, and museums.

(6) *Department of Justice*: all programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice, including courts and correctional institutions; commerce and industry, including general economic development, banking and finance, consumer protection, insurance, and small business; planning, development, and regulation (unless assigned to other designated agencies); state and local government support services (e.g., audit, personnel, comptroller, administrative services); all other government functions not assigned to other designated agencies.

(7) *Department of Labor*: all programs, services, and regulatory activities relating to labor and the work force.

(8) *Department of Transportation*: all programs, services, and regulatory activities relating to transportation, including highways, public transportation, traffic management (non-law enforcement), automobile licensing and inspection, and driver licensing.

(c) Responsibility for the implementation of subpart F of this part for components of State or local governments that exercise responsibilities, regulate, or administer services, programs, or activities relating to functions not assigned to specific designated agencies by paragraph (b) of this section may be assigned to other specific agencies by the Department of Justice.

(d) If two or more agencies have apparent responsibility over a complaint, the Assistant Attorney General shall determine which one of the agencies shall be the designated agency for purposes of that complaint.

{{35.191 - 35.999 [Reserved]

**Appendix A to Part 35 -- Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services (Published July 26, 1991)**

NOTE: For the convenience of the reader, this appendix contains the text of the preamble to the final regulation on nondiscrimination on the basis of disability in State and local government services beginning at the heading "Section-by- Section Analysis" and ending before "List of Subjects in 28 CFR Part 35" (56 FR [INSERT FR PAGE CITATIONS]; July 26, 1991).

_____    _____
Date                              Dick Thornburgh

Attorney General

Last Updated October 5, 2005