UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL WEST,                )<br>                              )<br>            Petitioner,       )<br>                              )<br>    v.                        )<br>                              )<br>MARGARET SPELLINGS,           )<br>Secretary,                    )<br>U.S. Department of Education, )<br>                              )<br>            Respondent.       )<br>_____) | Civil Action No. 06-1012 (RMC) |

**RESPONDENT'S REPLY MEMORANDUM AND SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT (COUNTS 1 AND 2) AND
OPPOSITION MEMORANDUM TO PETITIONER'S RECONSIDERATION EFFORT**

The Secretary of the United States Department of Education (EDD), Respondent herein, through counsel, the United States Attorney for the District of Columbia, respectfully submits this reply memorandum and supplemental memorandum in support of her Motion to Dismiss or, in the Alternative, for Summary Judgment as to Counts 1 and 2 of the Complaint, and in response to Petitioner's opposition to the motion, styled as his Response to Respondent's Motion to Dismiss, submitted on November 13, 2007, but filed on November 16, 2007, and as supported by his Supplemental Response, submitted on November 14, 2007, and filed on November 19, 2007.[1] Respondent also submits this memorandum in opposition to Petitioner's filings styled as a Motion for Specific Factual Findings and Conclusions of Law, and a Memorandum of Law in support thereof. All of Petitioner's filings, except his Supplemental Response to Respondent's Motion to Dismiss (which addresses Counts 1 and 2) appear only to address Counts 3 through 12. Respondent

---

[1] Petitioner did not file a motion for leave to file his late-filed submissions. EDD, nonetheless, addresses the substance of these filings.

submits that she is entitled to judgment in her favor on, or dismissal of, Counts 1 and 2 inasmuch as Petitioner's claims are without merit. Plaintiff fails to meet the legal standard for reconsideration and appears to be seeking simply another opportunity to argue against the Court's March 2007 decision to grant summary judgment in favor of Respondent as to Counts 3 through 12.

## DISCUSSION

**The March 2007 Award of Summary Judgment to Respondent on Counts 3 through 12 Was Correct**

The Court has granted summary judgment in favor of Respondent as to Counts 3 through 12 by memorandum opinion and order filed on March 29, 2007. Docket Nos. 24 & 25. West v. Spellings, 480 F.Supp.2d 213 (D.D.C. 2007). Accordingly, at best, Petitioner's filings styled as a Response to Respondent's Motion to Dismiss and his Supplemental Reply and a Memorandum of Law in support thereof, as well as his filings styled as a Motion for Specific Factual Findings and Conclusions of Law, and a Memorandum of Law in support thereof, could be deemed to seek reconsideration, given that they address Counts 3 through 12. Accordingly, in the event the Court decides to consider the merits of these submissions, Respondent hereafter regards Petitioner's submissions as seeking reconsideration.

As stated by the Court in Singh v. George Washing Univ., 383 F.Supp.2d 99 (D.D.C. 2005), "[f]ederal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case." Id. at 101, citing Cobell v. Norton, 355 F.Supp.2d 531, 539 (D.D.C.2005). While the Rule 54 standard is less stringent than the Rule 60(b) standard and permits reconsideration as justice so requires, this standard is not without restriction. As the Singh Court explains,

> While the phrase, "as justice requires," is somewhat abstract, it is a shorthand for more concrete considerations. Justice may require revision when the Court has

2

> "<u>patently misunderstood a party</u>, has made a <u>decision outside the adversarial issues</u> presented to the Court by the parties, has made an <u>error not of reasoning but of apprehension</u>, or where a <u>controlling or significant change in the law or facts</u> [has occurred] since the submission of the issue to the Court." [<u>Cobell v. Norton</u>, 224 F.R.D. 266, 272 (D.D.C.2004)] (citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990) (internal quotes omitted)). Errors of apprehension may include a Court's failure to consider "controlling decisions or data. that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir.1995).

<u>Id</u>.

Plaintiff's reconsideration request asks the Court to consider arguments he either did advance or could have advanced both in his original written motion and at oral argument on January 17, 2007. The issues have not changed, and the state of the law in this Circuit has not changed. So, reconsideration should be unavailable. <u>Id</u>. No fact or legal argument presented by Plaintiff suggests that the Court's original judgment was somehow unjust. Certainly, Plaintiff clearly cannot satisfy any of the <u>Singh</u> factors quoted above.[2]

Petitioner fails to set forth an adequate basis for the Court to reconsider its decision. The Court's decision was well-reasoned and based upon the original submissions by the parties. Petitioner has not come forward with any new evidence or new arguments that could not have been advanced in his original filings.

In its March 29, 2007 Memorandum Opinion, the Court concluded that Petitioner sought a writ of mandamus compelling EDD to comply with Section 504 by investigating his allegations

---

[2] Because Plaintiff seeks reconsideration of an interlocutory order, the law of the case doctrine does not automatically apply. See <u>Moore v. Hartman</u>, 332 F.Supp.2d 252, 256 (D.D.C. 2004), citing <u>Langevine v. District of Columbia</u>, 106 F.3d 1018, 1022-23 (D.C. Cir. 1997). However, "[a]s the D.C. Circuit has stated, '[i]nconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that we must act alike in all cases of like nature.' " <u>Id</u>., quoting <u>LaShawn v. Barry</u>, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (noting that the law of the case doctrine helps implement this principle).

against Webster University, compl. ¶¶ 37 & 90, and asserted jurisdiction under the APA, 5 U.S.C. § 701 et seq., and the All Writs Act, 28 U.S.C. § 1691. West, 480 F.Supp.2d at 216. The Court concluded it is true that Section 504 of the Rehabilitation Act and EDD regulations permit any person who believes he has been subjected to discrimination to file a written complaint with the agency, and EDD is then required to undertake a prompt investigation to determine if the program receiving federal funds is in compliance with the statute. Id. And, it is true, as the Court concluded, that if EDD determines that the complaint is meritorious, EDD has certain enforcement powers available, including suspension or termination of federal funding. Id. at 216-217. However, a complainant may bring an action under the statute only against the alleged discriminating institution. Id. at 217, citing Cannon v. Univ. of Chicago, 441 U.S. 677, 709 (1979); Women's Equity Action League v. Cavazos, 906 F.2d 742, 745 n.1 (D.C.Cir.1990).

The Court properly concluded that Petitioner does not have a right to bring a private action against EDD. Id. While he may have a private right of action against the institution, the allegedly discriminating recipient of federal funds, he cannot seek judicial review of the federal government agency's decision regarding his complaint against such recipient. Id. (citing cases). The Court properly concluded that Petitioner has no actionable claim under the Rehabilitation Act. Further, as the Court properly found, Petitioner's available remedy against the institution precludes APA review. See id.

Finally, the Court properly determined that mandamus was not available because, in addition to the general proclivity of courts to avoid such a drastic remedy, Petitioner's inability to establish a right to relief and the remedy available under the Rehabilitation Act, courts do not have authority under the mandamus statute to order a government official to perform a discretionary duty, and an

agency's enforcement decision is a matter of discretion. Id. at 217-218, citing Heckler v. Chaney, 470 U.S. 821, 832 (1985). The Court correctly found that the All Writs Act was of no assistance to Petitioner because the provision, by its terms, limits "the authority to issue writs . . . to the issuance of process 'in aid of' jurisdiction which is created by some other source and not otherwise enlarged by the Act. . . . The statue 'itself is not a grant of jurisdiction,' id., and does not provide a basis for Mr. West's cause of action here." Id. at 218, quoting and citing In re Tennant, 359 F.3d 523, 527 (D.C. Cir. 2004).[3] Petitioner's arguments advanced in his most recent filings mirror those previously advanced or clearly could have been advanced in his earlier filings. Nothing has changed. Accordingly, the Court need not disturb its decision granting summary judgment in favor of Respondent.

**Complaint Count 1 - February 8, 2006 FOIA Request**

Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment seeks, with respect to Count 1 therein (arising from Petitioner's February 8, 2006 FOIA request): (1) dismissal of the claim as moot because FOIA does not require EDD to create new documents, and EDD has produced to Petitioner all records containing the information requested or, in the alternative, (2) summary judgment for EDD on the claim because EDD has conducted a reasonable and adequate search for records responsive to Petitioner's FOIA request. See Respondent's Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment ("Resp's Memorandum") at 5-10.

---

[3] The Court also properly concluded that Petitioner's citation to federal regulations was inapposite. Id. at 218 n.2.

In Petitioner's Supplemental Response to Respondent's Motion to Dismiss ("Petitioner's Response"), Petitioner challenges Respondent's dispositive motion on two grounds. Specifically, Petitioner asserts (1) that EDD has not produced all records responsive to his FOIA request – which sought, *inter alia*, a compilation of "all of the retaliation and discrimination allegations made against Webster University that [the Office for Civil Rights (OCR) has] received or aware [sic]" – because, according to Petitioner, while Counts 3 through 12 of his Complaint (previously dismissed by the Court, see March 29, 2007 Memo. Op., Docket Entries 24 & 25) concerned "several separately reported incidents of discrimination or retaliation. . . . [,]" "none of the several reported incidents of discrimination and retaliation appear on any [of] Respondent's proffered records" (see Petitioner's Response at 23-24, 29, 32-33; and (2) Respondent has not produced evidence to counter Petitioner's assertion that an unidentified Agency receptionist told him in a telephone conversation, on an unspecified date, that "all incoming reports of discrimination are entered into her computer database to monitor the status of these events" (see Petitioner's Response at 26-28). For the reasons outlined below, Petitioner's contentions are without merit, and judgment should be entered in Respondent's favor, or dismissal entered, on Counts 1 and 2.

First, Petitioner contends that a number of his own retaliation and discrimination allegations within the scope of the February 8, 2006 FOIA request – specifically, the allegations identified in Counts 3 through 12 of his Complaint – were not identified in the records produced by the Agency to him in response to his request, making that response incomplete. Petitioner's contention is without factual support and is unmeritorious.

EDD has conducted an analysis of the communications encompassed by Counts 3 through 12 that Petitioner alleges are separate reports of discrimination or retaliation made by him to OCR,

for the purposes of: (a) ascertaining whether Petitioner in fact filed separate complaints of discrimination or reprisal on each of the dates specified in Complaint Counts 3 through 12; and (2) ensuring that each of Petitioner's allegations of discrimination or reprisal by Webster University received by OCR was accounted for in the materials the Department released to Petitioner in response to the February 8, 2006 FOIA request. See February 15, 2008 Declaration of William Dittmeier ("Dittmeier Decl.") at 5. This analysis determined, contrary to Petitioner's unsupported and conclusory claims, that all of Petitioner's allegations of discrimination or retaliation in Complaint Counts 3 through 12 concerned one or more of the following OCR Case Numbers: 07052011, 07053031, 07042051, and/or 07032032, and that said complaints were all identified in the Agency's responses to Petitioner's February 8, 2006 FOIA request. See Dittmeier Decl. at 6, 7.

**Complaint Count 1 – Speculative Challenge to Search**

Second, Petitioner's Response accuses EDD of failing to respond to Petitioner's general allegation that an unidentified "intake receptionist" of EDD informed Petitioner in a telephone conversation that occurred on some unspecified date "[d]uring that [sic] relevant time period" that "all incoming reports of discrimination are entered into her computer database to monitor the status of these events." In fact, Respondent's dispositive motion noted both that her response to Petitioner's February 8, 2006 FOIA request identified all allegations of discrimination filed against Webster University that OCR did investigate and that neither EDD generally nor OCR specifically maintains a list of allegations made to OCR, but not investigated by it. See Respondent's Memorandum at 7-8. Given the general nature of Petitioner's allegation, EDD can only respond by attempting to prove a negative. The Court, however, may accept the Agency's good faith representations concerning the nature of, and basis for, its search. It is well-settled that, as the court held in Safecard Serv., Inc. v.

Sec. & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991), "[a]gency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Petitioner's claims about some unidentified employee, with whom he allegedly had a conversation on an unspecified date and time, is insufficient grounds to reject the Agency's specific assertions as to the adequacy of its search.

In any event, Petitioner's argument warrants no further consideration both (1) because, notwithstanding that the FOIA does not require an agency to create new records or answer questions, see Students Against Genocide v. Dep't of State, 257 F.3d 828, 837 (D.C. Cir. 2001); Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.") (citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975); Krohn v. U.S. Dep't of Justice, 628 F.2d 195, 197-98 (D.C. Cir. 1980) (holding that FOIA did not require the production of "selective information" rather than designated agency records); 34 C.F.R. § 5.15 ("Records are not required to be created by compiling selected items from the [Department's] files…."), Respondent's supplemental response to the February 8, 2006 FOIA request produced documents to Petitioner from which the information he sought could be extrapolated (Respondent's Memorandum at 8-9) and (2) because the FOIA does not obligate an agency to document the fate of records identified by a requester that cannot be found, but only requires it to make a reasonable search for records in the places they might be expected to be found. Roberts v. United States Dep't of Justice, No. 92-1707, 1995 WL 356320, at *2 (D.D.C. Jan. 28, 1993); Miller, 779 F.2d at 1385 ("the Department is not required by the Act to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found."); Coalition on Political

Assassinations v. DOD, 12 Fed. Appx. 13, 14 (D.C. Cir. 2001) ("[t]hat responsive documents may have once existed [does] not establish that they remain in the [agency's] custody today").

In sum then, EDD submits that Count 1 of the Complaint should be dismissed as moot because FOIA does not require EDD to create new documents, and EDD has produced to Petitioner all records containing the information requested or, alternatively, Respondent is entitled to summary judgment because it has conducted a reasonable and adequate search for records responsive to Petitioner's FOIA request and has produced to Petitioner all records located that are responsive to his February 8, 2006 FOIA request.

**Complaint Count 2 – November 25, 2005 FOIA Request**

Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment seeks dismissal of, or judgment on, Count 2 of the Complaint (arising from Complainant's November 25, 2005 FOIA request), based on Petitioner's failure to exhaust administrative remedies prerequisite to suit. See Respondent's Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment ("Respondent's Memorandum") at 10-13. Specifically, Petitioner did not comply with the requirement, under both the FOIA and EDD's implementing regulation, that his request "reasonably describe" the records sought, despite repeated Agency requests that he do so, depriving this Court of jurisdiction over Count 2 of the Complaint. Id. at 11, citing Gillin v. Internal Revenue Service, 980 F.2d 819 (1st Cir. 1992).

In Petitioner's Supplemental Response to Respondent's Motion to Dismiss [Sic] ("Petitioner's Response"), Petitioner made clear for the first time that he now seeks the EDD's file concerning a request submitted by him to OCR for reconsideration of OCR's decision concerning Petitioner's discrimination complaint administratively denominated OCR Case No. 07052031. On that basis,

9

and purely as a matter of administrative discretion, EDD transmitted a copy of the file concerning Petitioner's referenced request for reconsideration to him by letter dated February 14, 2008. See Declaration of Joanna Dailey ("Dailey Decl.") at 6-7.

The only information withheld in that release were the names of persons referenced in the documents. See Dailey Decl. at 2 n. 1. As to the withholding of these names, EDD relies on exemptions (b)(6) and (b)(7)(c). FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" have been broadly defined by the Supreme Court to include any "Government records on an individual which can be identified as applying to that individual." U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 601-602 (1982).

In determining whether a disclosure would constitute a clearly unwarranted invasion of personal privacy, the agency and/or court must weigh the privacy interests in nondisclosure against the public interests in disclosure. National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir.1989). The Supreme Court has also said that individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature. Washington Post, 456 U.S. at 600.

The weight to be given the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law. Reed v. NLRB, 927 F.2d 1249, 1252 (D.C. Cir.1991). To assess the public interest, the court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny. . .Official information that

sheds light on an agency's performance of its statutory duties" merits disclosure. U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). The purposes of FOIA, as intended by Congress, are "not fostered," however, "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Id. In Judicial Watch of Florida, Inc., the court granted summary judgment to the agency and said that "there is no public interest which outweighs individuals' privacy interests in their home addresses and telephone numbers." Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice, 102 F.Supp.2d 6, 8, 19 (D.D.C.2000).

      Exemption 7(C) allows an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

As a threshold matter, the records protected by Exemption 7 must be compiled for "law enforcement purposes." In this case, the records were compiled pursuant to the EDD's statutory authority because they were, as noted in this Court's previous decision, as part of EDD's enforcement of Section 504 of the Rehabilitation Act and agency regulations. West, 480 F.Supp.2d at 216-217; April 2007 Declaration of William Dittmeier at ¶¶ 1-3.

      Exemption 7(C) protects records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The exemption protects "the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (internal quotation marks omitted). Thus, the courts have held that the identities of law

enforcement officers who work on criminal investigations, Davis v. U.S. Dep't of Justice, 636 F.2d 1276, 1281 (D.C. Cir. 1992), as well as individuals who provided information to law enforcement authorities have protectable privacy interests in their anonymity pursuant to Exemption 7(C).

Once a privacy interest has been established, it must be balanced against the public interest, if any, that would be served by disclosure of the information. Albuquerque Publ'g Co. V. Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The only relevant public interest in this analysis is that of "shed[ding] light on an agency's performance of its statutory duties." United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). This standard is not easily satisfied when law enforcement information pertaining to third-party individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitsgibbon, 911 F.2d at 768. Furthermore, in order to overcome legitimate privacy interests, the requester must demonstrate that the public interest is both significant and compelling. See NARA v. Favish, 541 U.S. 157 (2004). Petitioner cannot demonstrate such a compelling public interest.

In sum then, EDD contends that Count 2 of the Complaint should be dismissed given Petitioner's failure to exhaust his administrative remedies. In the alternative, Respondent asserts that Count 2 of the Complaint should be dismissed as moot because, as the discussion above establishes, EDD has now released to Petitioner, with appropriately supported redactions, all of the documents sought in his November 2005 request. Trueblood v. U.S. Dept. of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996) (quoting Crooker v. United States State Dept., 628 F.2d 9, 10 (D.C. Cir. 1980)); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).

WHEREFORE, Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment should be granted and Petitioner's Motion for Specific Factual Findings and Conclusions of Law should be denied.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739 / (202) 514-8780 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2008, I caused the foregoing Respondent's Reply Memorandum and Supplemental Memorandum in Support of Her Motion to Dismiss Or, in the Alternative, for Summary Judgment (Counts 1 and 2) and Opposition Memorandum to Petitioner's Reconsideration Effort and attachments, to be served on the Plaintiff by mail, postage prepaid, addressed as follows:

Michael West
P.O. Box 1935
St. Charles, MO 63302

/s/
OLIVER W. McDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739